CASE 107—ACTION BY PHILLIP BERG, &C. AGAINST ANNIE FRANTZ, &C. TO SET ASIDE A CONVEYANCE AS FRAUDULENT.—OCTOBER 1.

## Berg, &c. v. Frantz, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. AFFIRMED.

FRAUDULENT CONVEYANCES—RE-CONVEYANCE BY GRANTEE TO GRANTOR —RIGHTS OF GRANTEE'S CREDITORS.

Held: Though property in the hands of a grantee, to whom it has been conveyed in secret trust for the purpose of defeating the grantor's creditors, may be subjected by the creditors of the grantee, yet the creditors of the grantee can not complain of a

Berg, &c. v. Frantz, &c.

reconveyance of the property by the grantee to the grantor prior to any attempt on their part to subject it.

A. E. WILLSON AND KOHN, BAIRD AND SPINDLE, FOR APPELLANTS.

POINTS AND AUTHORITIES.

1. The burden of proof as to the *bona fides* of a conveyance between near relatives is on the parties to the deed, when attacked as fraudulent by creditors.    Heffly v. Hunder, 75 N. W., 53; Lavelle v. Clark, 18 Rep., 759; Eddelmuth v. Wybrant (Ky.) 53 S. W., 528; 21 Rep., 929.

2. Property conveyed in fraud of creditors, in secret trust to be re-conveyed, may, after its re-conveyance to the fraudulent grantor, be subjected to the payment of the creditors of the fraudulent grantee.  Anderson's Assignee v. Anderson, 80 Ky., 638; Allison v. Hagan, 12 Nev., 38; Chapin v. Pease, 10 Conn., 69, Ib., 25 Am. Dec., 36; Mahar v. Swift, 14 Nev., 324; Keel v. Larkin, 83 Ala., 143; Burks v. Burks, 12 K. L. R., 552; Walton v. Tusten, 49 Miss., 576; Smith v. Lane, 3 Pick., 205. Clark's Admr. v. Rucker, 7 B. Mon., and a few kindred cases are readily distingushed from the case at bar, even if the reasoning of that case should be adhered to.

3. A conveyance without consideration is void as to creditors. O'Kane v. Vinnidge, 21 Rep., 1551; Kentucky Statutes, secs. 1906-7.

4. One who permits another party to be held out as the owner of property will be estopped from claiming ownership as against creditors whose claims have arisen on the faith of, or been induced by, the appearance.  Hildeburn v. Brown, 17 B. Mon., 782; Minnich v. Schaffer, 34 N. E., 987; Bigelow on Estoppel, 560; Herman on Estoppel, sec. 978; Anderson v. Armstead, 69 Ill., 452; Michener v. Bengle, 34 N. E., 664; Adams v. Curtis, 36 N. E., 1095; Lehman v. Winkler, 8 So., 870.

5. Secret liens, mortgages and understandings are as void against creditors whose claims are created during the suspense of publicity as they are against purchasers.  Wicks v. McConnell, 20 Rep., 84; Clift v. Williams, 20 Rep., 1261.

6. A trust is never raised, nor a defense permitted, which has its foundation in the iniquitous conduct of the person claiming its benefit.  Ford's Exor. v. Lewis, 10 B. Mon., 127; Jones v. Read, 3 Dana, 540; Pomeroy's Eq. Jurisp., vol. 2, sec. 987; Tyler v. Smith, 18 B. Mon., 798; Wright v. Wright, 2 Littell, 12; Hill v. Scott, 12 Rep., 877; Post v. Goodan's Exor., 5 Rep., 770; 14 A. & E. Ency. of Law (2d ed.) 272-6.

R. C. & J. J. DAVIS, ATTORNEYS FOR APPELLEES.

We assume it as true that the conveyance from Mrs. Frantz
and her husband to Monsch was made to save the property
in question from being taken to pay the cattle company bonds
on which Frantz was surety. The proof shows this and that it
was a secret trust, a trust, too, that could not have been en-
forced.

This property was undoubtedly subject to Monsch's debts
while it remained in his hands. It was also subject to Frantz's
debts under proper proceedings by his creditors. But, having
having been re-conveyed before Monsch's creditors acquired any
lien on it, it can not now be subjected to the payment of their
debts. They did not acquire any indefeasible right in the
property by virtue of the transfer to Monsch and he, having
parted with the title before they acquired any lien upon it,
they can not now assert a claim against it. Their equity, if
any, must yield to the equity of Mrs. Frantz, as it has become
executed. We submit that Monsch, having done what in good
conscience he ought to have done, and none of his creditors be-
ing any the worse therefor, the court shoud not set aside his act
and subject the property to his debts.

## POINTS AND AUTHORITIES.

Validity of pledge of stock; Validity of transfer of real es-
tate executed conveyance; Wait on Fraudulent Conveyances
& Creditors' Bills, sec. 398, page 724; Bump on Fraudulent
Conveyances sec. 203; Davis v. Graves, 29 Barbour, 480; Stan-
ton v. Shaw, 3 Baxter (Tenn.) 12; Petty v. Petty, 31 N. J. Eq.,
pages 8 and 14; Clark v. Rucker, 7 B. Mon, page 583; Second
National Bank of Lafayette v. Brady, &c., 96 Indiana, 498; Peck
v. Jones, 30 S. W. Reporter, 382; First National Bank v.
Hostetter, 61 Iowa, 395; Coffal v. Hale, 49 Iowa, 53.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

In March, 1891, the appellee, David Frantz, conveyed to
his wife, Annie Frantz, in consideration of $1 and love and
affection, a house and lot on Washington street, in Louis-
ville, which they had long occupied as a residence. The
title remained in the wife until August, 1893, when she con-
veyed the property to Chas. L. Monsch, her son-in-law, for
the recited consideration of $7,000 cash. At the date of this
transfer to Monsch he was the president and principal stock-

holder of the Farmers' Home Hotel Company, a corporation
conducting a hotel known as the "Farmers' Home." The
articles of incorporation of the hotel company provided
that, before the stock could be sold to an outsider, it should
first be offered to the other stockholders; and it appears
from the minutes of the hotel company that a short time
previous to the conveyance of the Washington street prop-
erty to Monsch he offered to sell 100 shares of his stock to
the other stockholders. When they declined to purchase,
he transferred 100 shares of his stock upon the transfer
book of the company to his mother-in-law. In October,
1895, Monsch reconveyed the property to Mrs. Frantz for
the recited consideration of $7,000 cash. About the same
time the hotel stock was transferred to Monsch by Mrs.
Frantz. In November, 1895, the appellant, Phillip Berg,
instituted this suit against Charles L. and Henry Monsch
on notes aggregating $2,500, and at the same time sued out
a general attachment against their property. On the 13th
of February, 1896, he filed an amended petition, in which
he alleged that the conveyance of Charles L. Monsch to his
mother-in-law, Mrs. Frantz, was without consideration,
and was made by him and accepted by her for the purpose of
defrauding his creditors. He also alleged that Monsch was
the owner of ten shares of the capital stock of the German
Security Bank of Louisville, upon which the original at-
tachment had been served, and asked that Monsch be re-
quired to produce his certificate, and that it be subjected to
the payment of his demand. Shortly after the institution
of this suit the other appellants instituted suit against
Charles I. Monsch, all seeking substantially the same relief.
The appellee Mrs. Annie Frantz answered, denying the al-
leged fraud in the transfer of the property, and further
stated that her husband, in March, 1891, was not individ-

ually liable in any sum whatever, but was bound as guarantor on the bonds of the Kentucky Cattle Raising Company for a large amount of money; and that in August, 1893, fearing financial disaster on account of this, and that the creditors of the cattle company might undertake to subject the property to the payment of their debts, she was persuaded by her husband to deed the property to their son-in-law, Monsch, for the pretended consideration of $7,000, but that as a matter of fact nothing was paid by Monsch for the property; and that the conveyance was made pursuant to an express understanding that he was to hold it in trust for her benefit, and was to reconvey it when demanded; that the sole purpose of the conveyance was to put the title beyond the reach of her husband's creditors. Whilst the appellee David Frantz answered that Charles L. Monsch had pledged the ten shares of bank stock to him on December 24, 1894, as collateral security for a note of $1,800, given on that day for borrowed money, and asked that his lien be enforced, and the property sold for the purpose of paying his debt. The circuit judge dismissed the petition of appellants.

Upon this appeal they rely for a reversal on two grounds: First, it is contended that the conveyance from Mrs. Frantz to Monsch on August 14, 1892, was an absolute conveyance, made in good faith, in consideration of the transfer to her of the hotel stock, without any understanding that it should be reconveyed; second, that, even if it be conceded that the facts as to the transfer were as alleged by Mrs. Frantz, this defense is founded in fraud, and the creditors of Monsch are entitled to subject the property to the payment of their demands, especially those which were created whilst he held the title to the property, notwithstanding the fact that he had reconveyed the property prior to the institution of

their suits and the suing out of their attachment. To support the first contention, they point to the transfer of the hotel stock and show by the testimony of one of the employes of the hotel that in 1893 this stock had some pecuniary value, but that at the time of the reconveyance to Monsch the stock of the company had become worthless, and he himself insolvent. On the other hand, both Mrs. Frantz and Monsch testify to the facts relied on in her answer, and that Mrs. Frantz never knew anything about the transfer of his hotel stock to her; that during the interval between the two deeds a dividend was declared upon this identical stock, which was placed to the credit of Monsch; and that he voted the stock and controlled it exactly as his own. It is also shown that Mrs. Frantz continued to occupy the premises exactly as she had done before the deed of August, 1893. It seems to us that there can be no doubt that there was no real consideration for the deed of August 14, 1893, and that it was made alone for the purpose of putting the property beyond the reach of the creditors of Mrs Frantz's husband; and there can be no doubt that any creditor of David Frantz under the testimony could have set aside his conveyance to his wife and that to Monsch by his wife as without consideration. Whilst a court of equity will not grant relief to a party who has made a conveyance in secret trust for the purpose of defeating his creditors, and so long as the vendee holds title thereto it is subject to the claims of his creditors to the same extent as any other property to which he has title; and whilst there is some diversity of opinion in the judgments upon this point—the decided weight of authority is that, until the creditors of the fraudulent vendee obtain a lien on the property, the vendee's right of alienation is perfect in respect to it, and it is not fraud upon his creditors for him to re-

convey it to his vendor. Until then the creditors of the
vendee have no legal or equitable claim in respect to it su-
perior to that of the vendor. See 14 Am. & Eng. Ency.
Law (2d Ed.), p. 259; Bank v. Brady, 96 Ind., 498; Bank
v. Hostetter, 61 Iowa, 395, 16 N. W., 289; Cramer v. Blood,
48 N. Y., 684; Davis v. Graves, 29 Barb., 480; Powell v. Ivey,
88 N. C., 256; Stanton v. Shaw, 3 Baxt., 12; Peck v. Jones,
10 Tex. Civ. App., 335, 30 S. W., 382. Bump. Fraud. Conv.
(Gray's 4th Ed.), section 203. says: "To the proposition
that a conveyance in pursuance or in consideration of an
agreement which can not be enforced is voluntary, there
is one exception. Whenever there is a moral obligation,
which, can not be enforced on account of the provisions of
the statute, there the party may waive the benefit of the
statute, and the transfer will be valid as against creditors.
Thus a debt which is barred by the statute of limitations,
or a discharge in bankruptcy, is a good consideration for
a conveyance. The statute of frauds is a defense which
the debtor may waive, and, if he, does so, a conveyance in
consideration of a claim that is within the statute will be
valid. If he receives the title to land which is paid for
by another upon a promise to hold it for the latter, he has
the right to perform the promise, and convey it to the real
owner. If the title to property is improperly taken in his
name, he may convey it to the real owner, or to a trustee
for his benefit, for the purpose of correcting the mistake,
whether a trust could be enforced in his favor or not. When
a parol partition has been made of land, and each party
has carried it out by taking possession of the part allotted
to him, a deed may subsequently be made in pursuance of
it. The moral obligation resting upon the grantee hold-
ing under a fraudulent transfer is sufficient to support a
reconveyance against his creditors." See, also, the case

of Petty v. Petty, 31 N. J. Eq., 8.   This exact question was considered by this court in Clark's Adm'r v. Rucker, 46 Ky., 583.   In that case John Clark made to his brother, William, a bill of sale of all his slaves for the purpose of placing them beyond the reach of his creditors, with a secret understanding that William was to hold them in trust for the benefit of the vendor's wife and infant child.   Shortly afterwards John Clark died, and William took possession of the slaves, claiming them as his own.   Subsequently becoming insolvent, he executed a bill of sale to the slaves to the widow and infant child of John Clark.   The creditors of William Clark sought to have this last conveyance set aside on the ground that it was fraudulent and without consideration.   In that case it was held that: "If the fraudulent vendee had still retained the title to the slaves they would have been liable for the payment of his debts, because as between the parties this contract, being executed, would have been obligatory on them, and revocable at the instance of the creditors of the vendor from whom the title passed by the bill of sale.   But as the slaves could have been subjected to the debts of the fraudulent vendeor, the creditors of the fraudulent vendee could not subject them after the title and possession had been conveyed to the widow and children of the fraudulent vendor before the creditors of the fraudulent vendee had acquired any title to them."   It is insisted for appellant that the reasoning in this case is not sound, and that it was repudiated in Anderson v. Anderson, 80 Ky., 638 (4 R., 579), although not expressly overruled.   In the Anderson case, it was contended for Clay that in 1870 he procured Holly to convey a tract of 223 acres of land to A. H. Anderson to hold for him in secret trust whilst he took the bankrupt law, and that after his discharge Anderson had conveyed the prop-

erty to him pursuant to this agreement. The creditors of Anderson, on the other hand, insisted that Clay, in his bankrupt proceedings, had sworn that he had no interest in any real estate, either under his control or held by any other person in trust for his use; and that he had no property whatever in reversion, remainder or expectancy; and whilst he claimed to have had a bond for a title from Holly, yet no attempt was made to prove its contents. In that case his contention was denied purely upon the facts of the case. There was no intimation of a purpose on the part of the court to abandon the law as announced in the earlier case of Clark's Adm'r v. Rucker. After a careful consideration of the very able brief of counsel for appellants and the authorities relied upon, we are of the opinion that the law as heretofore announced in Clark's Adm'r v. Rucker should be adhered to. In regard to the ten shares of bank stock pledged by Monsch to Frantz to secure the $1,800 note, we think the claim of Frantz is fully substantiated by the testimony.

For reasons indicated, the judgment is affirmed.