Case 37.—ACTION BY J. A. BELILES AGAINST DAISY CARSON TO SET ASIDE A CONVEYANCE.—October 25.

## Carson, &c. v. Beliles.

Appeal from Butler Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

Fraudulent Conveyances—Rights of Parties—Suit for Reconveyance—Plaintiff believed himself about to be wrongfully sued for damages. To discharge such a suit, he, after bringing action to divide land in which he was interested, ordered the commissioner to make a deed without consideration to another. Subsequently plaintiff informed the grantee in the deed of what had been done, and the grantee agreed to hold the land and to reconvey to plaintiff on his request. Held— That the court would not aid plaintiff in compelling a reconveyance.

SPEED GUFFY and HARRELD & WILLIS for appellant.

1. Said conveyance is evidenced by a written assignment of J. A. Beliles, which is in words and figures as follows: "The commissioners herein having filed their report allotting a part of the land herein to me, W. T. Ricketts, commissioner to make deeds herein, is hereby ordered to make deed of part allotted to me, to my sister Margaret M. Summerville, she having bought same from me for a sufficient consideration, this September 26, 1898.

"J. A. BELILES."

2. J. A. Beliles alleges in his petition that he deeded the land to his sister to hold in trust for him, and that she promised to deed it back to him upon his demand. But the said deed and assignment shows that Mrs. Summerville had bought the land for a sufficient consideration, and is an absolute deed and not a deed of trust. The plaintiff seeks to show by his own evidence that Mrs. M. M. Summerville never paid any consideration for said land, and upon this point he is not corroborated by any witness, and the deposition of Beliles should not be considered upon this point, as he is testifying against a dead person and also infants.

3. In this case neither the infants nor their guardian have testified, and J. A. Beliles has no right to testify about any transaction or conversation had with the deceased, Mrs. Summerville, or the infants. When we take Beliles' deposition out upon this point there is no longer any question about who owns the land in suit.

## AUTHORITIES CITED.

Sec. 606, subsec. 2 of Civil Code of Practice; Hardin, Adm'r v. Taylor, 78 Ky., 593; Hurry v. Kline, 93 Ky., 358; Munford v. Green, Adm'r, 103 Ky., 140; Holtheide v. Smith, 24 Ky. Law Rep., 2535; Vansant, &c. v. Runyon & Manard, 19 Ky. Law Rep., 1981.

N. T. HOWARD and W. A. HELM for appellee.

The authorities referred to by Willis, guardian for Summerville, do not apply to a case of this kind. In those cases there was a contract of sale between the parties and consideration paid, and no allegation of fraud or mistake. In this case there was no contract of sale made between Beliles and Margaret Summerville, but Beliles ordered the deed made to her without her knowledge or consent and without consideration, and she agreed to reconvey same to him. And according to the authority laid down in 5 Bush, 47, she held said land in trust for the real owners, and must convey it to them or pay for same. In this case there was no creditor of Beliles defrauded, but the proof shows that he paid

all of his debts, and there is no principle of equity that would allow Summerville or his children to hold said land without paying Beliles for his one-half interest in same, there having been no fraud practiced on any of his creditors. And while the written authority given by Beliles to the commissioner to make the deed to his sister, says for a sufficient consideration, it does not say it was paid, or that it ever was paid, but the evidence shows that no consideration was ever paid by the vendee, Margaret Summerville.

### AUTHORITIES CITED.

5 Bush, 47; 8 Bush, 241; 2 Ky. Law Rep., 276.

OPINION BY JUDGE BARKER—Reversing.

The one question involved on this appeal is whether or not J. A. Beliles is entitled to have rescinded a conveyance made by him to his sister, Mrs. M. M. Summerville. In his petition he states the facts as to the conveyance from himself to his sister as follows: "That about the time the deed was made plaintiff (J. A. Beliles) was threatened with a suit for damages or bastardy proceedings, which plaintiff knew to be wholly unfounded in truth, and false and unwarranted and malicious, and to discharge such a suit plaintiff, after he had brought suit to divide said land, and when the deed was to be made by master commissioner, plaintiff simply ordered the commissioner to make the deed to Margaret Summerville, wife of defendant M. M. Summerville. without consideration from her (Margaret), and without her knowledge or consent, and plaintiff afterwards informed her of what had been done, and she agreed that she would hold the land in her name and would deed it back to plaintiff upon his request to do so." If the foregoing statements are true, do they warrant a judgment of rescission as against appellants, who are the children and heirs at law of Margaret Summerville, now deceased? If so, the

judgment must be affirmed; if, not, it should be reversed.

In the case of Tantum v. Miller, 11 N. J. Eq., 551, the plaintiff alleged that she, being threatened with prosecution for a larceny, of which she was entirely innocent, in order to discourage it, made a conveyance·of her property to Eliza, the wife of Charles Miller, upon the secret trust that she would hold it, and reconvey it upon demand.  In sustaining a demurrer to the bill, it was said: "If this bill can be maintained, the court must take the broad ground that if a person charged with a crime conveys away his property for the avowed purpose of·protecting it against the consequence of his conviction, if he escapes such conviction, a court of equity will aid him in recovering back his property.  It is not alleged, in this case, that any fraud was practiced upon the complainant by the defendants or by any one else. It is not alleged that the prosecution was a malicious one, and that those concerned in it have been any way benefited by the conveyance, or that by their advice, or through their contrivance, the complainant was induced to execute the deed.  But the complainant was charged with larceny; and, although it is alleged that she was entirely innocent of the charge, it does not appear but that there were good grounds of suspicion, or that her accusers were actuated by any other than a most laudable desire to promote public justice.  Under these circumstances, the complainant made the conveyance for the unlawful purpose of placing it beyond the reach of the law, if the threatened prosecution should prove successful.  The information alleged to have been given her by her friends was correct.  Her property was in jeopardy from the consequences of such a prosecution.  If convicted, her property was liable for the costs.

The court might, upon such conviction, impose a fine of $500, which would be a lien upon her property. She made the deed for the purpose of placing her property beyond the reach of the process of the law in case she should be convicted. This was against public policy. This court can not aid a person under such circumstances. The complainant confided in the honesty of her niece, and there the court must leave her.''

In Cameron v. Romele, 53 Tex., 238, the vendor conveyed property to the vendee under the belief, inspired by the vendee, that she (the vendor) was about to be sued, and that she would, therefore, likely lose her property. In refusing to set aside the conveyance, the court stated the rule as follows: "It may, we think, be well questioned whether the alleged trust upon which this deed was executed is not of a character which the policy of the law forbids the courts to enforce. The purpose of the execution of the deed by appellee was to protect the property from liability for a debt which, through the fraudulent misrepresentation of Mather, she was induced to believe other parties were seeking to hold her liable. If the facts were as she supposed when she made the deed, however fraudulent may have been the conduct of the vendee, the court could give her no relief. But her motive in executing the deed is precisely the same, whether she acted upon her knowledge of the facts, or upon a mistaken belief in regard to them, growing out of the fraudulent representations of her vendee.''

In Harris v. Harris' Ex'or, 23 Grat. (Va.), 737, one, believing himself about to be wrongfully sued for damages, executed bonds in large sums without any consideration therefor, in order to protect himself from wrongful judgments which he anticipated

would be recovered against him.   In refusing to can-
cel these bonds the Court of Appeals of Virginia
said: "It is, however, urged with much ingenuity and
force that this case does not come within the opera-
tion of the statute of frauds, because these bonds
were not given to hinder and delay creditors, but
only to protect the defendant against the assertion
of unjust demands, which he apprehended might be
recovered against him because of the 'unfavorable
and unjust constitution of courts and juries at that
time;' that there was no fraudulent intent to secure
his property against the claims of creditors, but the
scheme resorted to was one intended for protection
against unjust claimants.   Now, it must be conceded
that a party claiming damages for the acts of another
must be regarded in law as much the creditor of
that other as one holding his bonds or other prom-
ises to pay.   Every person having a legal demand
against another is his creditor, whether that demand
is one sounding in damages or one that comes under
a contract.   This is a proposition too plain for argu-
ment.   And it is to my mind equally plain that the
question whether the demand asserted is a just and
legal one, and whether the courts and juries will be
likely to enforce an illegal and unjust claim, is not
one for the party himself to decide.   Nor will an-
other court, passing upon his transactions in trans-
ferring his property to another to protect himself
against such demands, made in regular legal proceed-
ings, inquire whether apprehensions were justified,
or whether the suits pending against him were
proper suits.   All these must necessarily be ques-
tions which another court can not inquire into,
and which certainly the party can not be allowed to
decide for himself."

In the case of Harper v. Harper, 85 Ky., 161, 8

Ky. Law Rep., 820, 3 S. W., 5, 7 Am. St. Rep., 583, it appeared that the vendor, who was an old and rather timid and weak-minded lady, conveyed her property to a relative, Charles Harper, who had fraudulently and falsely frightened her into the belief that she was to be sued for libel. In an action to recover the property this court clearly recognized the rule that, if one undertakes to defeat a claim asserted against him by conveying his property to another, he can not afterwards recover that which he fraudulently conveyed. In the case cited, however, the deed was rescinded on the ground that the parties were not in pari delicto; that the timid, weak-minded vendor was the victim, rather than the accomplice, of the vendee. Judge Holt, who spoke for the court, said: "It is true that in cases of executed contracts, if the parties be in pari delicto, they will be left where they have placed themselves. If, however, one party is but an instrument in the hands of the other, then they are not in pari delicto."

The refusal of the chancellor to interfere where the vendor, for a fraudulent purpose, has conveyed his property on a secret trust to reconvey, is not alone to protect the creditors, although that consideration has its weight in the problem. The creditors have a remedy of their own by a proceeding to set aside the conveyance that their debts may be paid. Of course, to do this there must be creditors in existence; for, if there are no creditors, there is no injury, and the conveyance stands. But that is not the case here. In this case the appellee, according to his own statement, in order to discourage one who sought, or was contemplating seeking, to enforce a claim against him, conveyed his property to his sister, and is now, after the feared prosecution has failed and his sister dead, seeking to recover it.

It is contrary to the policy of the law that one should be "discouraged" in the assertion of a legal right by his adversary conveying his property without consideration. The transaction involves moral turpitude in the intention with which it is done. What actually happens may be immaterial. Suppose, for an example, one conveys his property on secret trust for the purpose of defrauding his creditors, and then should afterwards pay all his debts; would the fact that no creditor was actually injured enable him to recover from his vendee? Or suppose one having no creditors should convey his property for the purpose of becoming indebted, and of then defrauding his dupes by being insolvent, but should repent before the fraud was committed; could it be maintained that, because he had paid his creditors in the first case, and never had any in the second, he could recover the property so conveyed? We think both these questions should be answered in the negative. The enforcement of a trust is a purely equitable remedy. The chancellor, originally, as a matter of grace—not legal right—seized upon the conscience of the trustee, and forced him to do justice, because it was immoral that he should defraud one who had confided in his honor. But he would not so aid one whose hardship arose from his own evil intent or moral turpitude. That which was conceived in sin, as to the interest of the wrongdoer, was permitted to be brought forth in iniquity; or, as one of the older opinions has it, "he who doeth fraud may not borrow the hand of the chancellor to draw equity from a fountain his own hath polluted." Believing it to be contrary to public policy that one should undertake to defeat a claim about to be asserted against him through the machinery of the law by conveying his property upon a secret trust, with a

false statement that it was made for a valuable consideration, we think the chancellor should have dismissed the bill which sought to recover the property so conveyed by appellee.

In arriving at the conclusion we have reached in this case, we are not unmindful of the fact that there is high authority opposing it, notably sec. 441, Bump on Fraudulent Conveyances (4th Ed.), and the cases cited in the note in support of the text; but we believe that the authorities we have followed are based upon a sounder policy and a more cogent logic.

Wherefore the judgment is reversed, for proceedings consistent herewith.