## Day, et al. v. Amburgey.
## W. E. and H. C. Grinstead v. Amburgey, et al.

(Decided February 23, 1912.)

### Appeals from Knott Circuit Court.

1. Appeal—Motion to Dismiss.—Where the Circuit Court properly refused to permit an intervening petition to be filed, upon the ground that the claim therein presented had no connection with the subject-matter of the original suit, the rejected intervenors are not proper parties to an appeal between the parties to the original suit, and a motion to dismiss the original suit for failure to make the intervenors parties to the appeal will be overruled.

2. Appeal May Be Granted on Record Filed by Others.—Where a record is filed in the Court of Appeals by a party to the original action, an intervenor whose petition was rejected in the Circuit Court, may prosecute an appeal upon that record. It is immaterial as to who files the record.

3. Statute of Frauds—Principal and Agent.—Where one employs another, by parol, as an agent to buy land, and the agent buys it for himself, and with his own money, the contract is within the statute of frauds, and the principal cannot compel the agent to convey the land to his principal.

4. Trusts.—Where one buys land at a judicial sale under a parol agreement to purchase it for another, who furnished the purchase money, or who had an actual interest in the land, or a bona fide

claim thereto, the statute of frauds does not control, and a resulting trust will arise in behalf of the promisee.

SMITH & COMBS, CHARLES H. MORRIS and W. W. CRAFT for Day and Adams.

HAZELRIGG & HAZELRIGG for Grinsteads.

J. J. C. BACH, JOHN M. BAKER and HAZELRIGG & HAZELRIGG for Amburgey.

OPINION OF THE COURT BY JUDGE MILLER—Reversing on the First Appeal and Affirming on the Second Appeal.

On May 5, 1908, the appellee, R. H. Amburgey, employed the appellant, Kelly J. Day, as his agent to buy from W. E. & H. C. Grinstead a tract of 331 acres of land in Knott county. Amburgey authorized Day to pay the Grinsteads $500.00 for the land, and agreed to give Day $100.00 for his services as agent. In June of the same year Day bought the land from the Grinsteads for $300.00; paid for it with his own money, and had the land conveyed to G. M. Adams, who, by agreement, was to hold it for Day.

On September 7, 1908, Amburgey filed this action against Day and Adams, and prayed that they be required to convey the title to said land to Amburgey, upon the ground that by reason of the employment of Day, and the trust and confidential relation that thereby existed between him and Amburgey in said transaction, a trust was created, whereby Adams and Day held the title for Amburgey. Before filing the suit Amburgey tendered to Day the $500.00 contemplated purchase money, and the $100.00 fee.

On July 20, 1909, W. E. & H. C. Grinstead tendered and offered to file their intervening petition, in which they claimed that Day had defrauded them out of $200.00, the difference between the sum Day paid the Grinsteads for the land and the amount that Amburgey had authorized Day to pay them for the land, and they prayed that they recover $200.00 from Day. They made their petition a counter-claim against Amburgey, and a cross-petition against Day and Adams.

In defense to Amburgey's suit, Day denied the contract, and interposed the statute of frauds as a bar to any recovery. The trial judge was of opinion that the agency existed, as claimed by Amburgey, and that by

reason of the violation of the contract by Day in regard to said transaction, an implied trust arose between them and in favor of Amburgey, that was not affected by the statute of frauds. And Amburgey having tendered to Day $452.40 in payment of the $300.00 purchase money, with interest thereon; $10.00 expenses incurred by Day in making the purchase, and $100.00 as his fee, the court ordered Day and Adams to convey said land to Amburgey; and from that judgment Day and Adams prosecute the first appeal.

Subsequently, W. E. & H. C. Grinstead prosecuted the second appeal, upon the same record, from the order of the court overruling their motion to file their intervening petition.

1. Amburgey has moved to dismiss Day's appeal against him, upon the ground that the Grinsteads should have been made parties to Day's appeal. This motion will have to be overruled. The court properly overruled the motion of the Grinsteads to file their intervening petition, since under no state of case could they have presented their claim against Day and Adams in the suit between Amburgey and Day and Adams. The claims were entirely different; had no connection whatever with each other, and were between different parties. The Grinstead pleading was not a sufficient pleading under any view one may consider it. It was not sufficient as a claimant's petition, for the reason that they were not claiming any fund or property in dispute; they merely asked a money judgment against Day for fraud. It presented no cause of action in their favor against Amburgey, and could not, therefore, under Section 96 of the Civil Code of Practice, be sustained as a counter-claim. And, as the Grinsteads were not defendants, and their claim was not affected by the original cause of action, and did not affect it, the pleading did not satisfy the requirements of sub-section 3 of Section 96 of the Code, as to a cross-petition. The chancellor properly rejected the proffered pleading; and this order overruling the motion to dismiss the first appeal and approving the action of the lower court in rejecting the pleading, necessarily affirms the Grinstead appeal.

2. Amburgey also moves to dismiss Grinstead's appeal against him, upon the ground that Grinstead has no right to prosecute an appeal based upon a record

theretofore filed in this court by Day. This motion is based upon section 734, of the Code, which provides that an appeal may be granted by the clerk of the Court of Apeals ''on application of either party or his privy, upon filing in the office of said clerk a copy of the judgment from which he appeals.'' It is insisted that the Grinsteads could only prosecute an appeal upon a record which they had filed in the office of the clerk of the Court of Appeals, and that in predicating their appeal upon the record theretofore filed by Day, they did so without authority of law. This contention, however, is without merit, since it is a well established practice that any party to a record may pray an appeal in the Court of Appeals upon the same record, although it be filed by the other party. Allen County v. U. S. Fidelity & Guaranty Co., 122 Ky., 832. It is immaterial as to who files the record.

3. The statute of frauds, being section 470 of the Kentucky Statutes, provides that no action shall be brought to charge any person upon any contract for the sale of real estate unless the contract, or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith, or by his authorized agent; and appellant contends that this statute bars appellee's right to maintain this action. This case can not be brought within the rule that would raise a resulting trust in behalf of the principal when the agent buys land in his own name and pays for it with the money of his principal, for the reason that Day used his own money in paying for the land. The petition is drawn upon the theory that the facts and circumstances above narrated created a constructive trust for appellee's benefit under the well known rule which Pomeroy formulates as follows:

''If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition, or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances and relations; and this trust they will fasten upon the conscience of the offending party, and

will convert him into a trustee of the legal title, and order him to hold it, or to execute the trust in such a manner as to protect the rights of the defrauded party and promote the safety and interests of society.'' Eq. Jur., section 1044.

If, however, the right to recover in this case rests upon a parol contract for the sale of land, it comes within the statute, and Amburgey can not maintain an action thereon.

There are a few cases which hold that where the agent has violated the confidence of his principal, the contract can not be deemed to be within the spirit of the statute of frauds, since it is merely an agreement by one party to act as the agent of another in conducting the negotiations for the transfer of property from a third party to the principal, and contemplates no transfer of land between the two parties to the contract. These cases hold that it is immaterial who pays the purchase price, since, whether it is paid by the principal or the agent, a trust in favor of the principal will result from the agent's breach of confidence in purchasing the property in violation of his agreement. Rose v. Hayden, 35 Kans., 106, 57 Am. Rep., 145; Chastain v. Smith, 30 Ga., 96; and Johnson v. Hayward, 74 Neb., 157, 5 L. R. A. (N. S.), 112, are of this class. These cases, however, are in a small minority. By the decided weight of authority the fact that the contract contemplated that the title should be taken in the name of the principal, seems to be considered immaterial and the principal's right to compel a conveyance to depend on who paid the purchase money. Where the agent buys the land for himself, and denies the trust, and no part of the purchase money is paid by the principal, it has been held in a uniform line of adjudications of this court that the principal can not compel the agent to convey the estate to him, as this would be directly in violation of the statute. If Amburgey's claim has any substantial foundation, it must rest upon the doctrine that a resulting or a constructive trust has arisen in his favor by reason of the transaction between him and Day. But in Bispham's Equity, section 80, the doctrine of resulting trusts is defined and limited as follows:

''Where, however, an agent buys land for his principal, and not only takes the conveyance in his own name, but also pays the price out of his own funds, no result-

ing trust will arise and the case will fall within the statute of frauds, because in such a case there is no payment of the purchase money upon which the right of the principal can rest, but that right is dependent solely upon the verbal promise of the agent. Where no money is advanced and there is nothing more in the transaction than is implied from the violation of the parol agreement, equity will not decree the purchaser a trustee.''

And, section 2353, of the Kentucky Statutes, likewise limits it as follows:

''When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person.''

In Sugden on Vendors and Purchasers, 15 Am. Ed., 703, the doctrine is thus stated:

''Where a man employs another person by parol as an agent to buy an estate, who buys it for himself and no part of the purchase money is paid by the principal and there is no written agreement, he can not compel the agent to convey the estate to him as that would be directly in the teeth of the statute of frauds.''

Turning to the Kentucky Decisions, we find in the early case of Parker's Heirs v. Bodley, 4 Bibb., 102, that Bodley relied upon an oral contract by which Parker was to buy certain land in Pennsylvania for the joint account of Bodley and Parker; and in consequence of the agreement Parker bought the land, and took the bond in his own name. In denying any relief to Bodley the court, speaking through Judge Owsley, said:

''In the consideration of this cause two points are presented for determination. First, does the contract come within the provisions of the statute of frauds, etc.? And, if it does, second, are there any circumstances in the case taking it out of the statute?  *   *   *

''The statute is a beneficial law, made for the avowed purpose of preventing frauds and perjuries, and we apprehend, should be construed liberally to attain that end; and although a contract for the purchase of lands may not come within the express letter of the law, yet as all the danger to be apprehended by suffering the admis-

sion of parol evidence in other cases of the sale of land, would equally apply to the case of a purchase, a construction calculated to meet the evil intended to be remedied by the makers of the statute, requires that such a case should be held to come within the statute. * * *

"If the trust is considered as created by the agreement of the parties, if it does not come within the letter, that liberality of construction just mentioned, which is alone calculated to prevent the mischiefs intended to be prevented by the statute emphatically requires it should be brought within the influence of the statute. Were the trust one resulting by operation of law, from facts and circumstances, there would not exist the same reason, and perhaps the statute in that case would not apply. But it is evident the trust in the present case, if it can be so denominated, is one created by contract, and is consequently within the statute."

In Fischli v. Dumarsely, 3 A. K. M., 23, Dumarsely, relied upon a contract, similar in substance, to that in Parker's Heirs v. Bodley, and the court, Chief Justice Boyle writing, used this language:

"It is evident that the decree can not be sustained. The parol testimony in the case strongly conduces, indeed, to prove the agreement alleged in the bill; but that agreement was never reduced to writing; and a mere verbal or unwritten contract for lands is remediless, according to the express provisions of the statute against frauds and perjuries. * * *

"The idea suggested in the argument that Fischli acted as the agent of Dumarsely in making the purchase to the extent of a moiety of the lots, and that the statute does not require the authority of an agent to be in writing, can not take the case out of the influence of the statute. The sufficiency of the authority of Fischli to have made a joint purchase in Dumarsely's name and his own, is not called in question. He has not done so, but has made the purchase in his own name; and whether he had an authority to make a purchase for the joint benefit of both, or not, is immaterial, if the agreement that he would do so can not be enforced because it was not reduced to writing."

Again, in Fowke v. Slaughter, 3 A. K. M., 56, Slaughter bought from White a tract of land at $6 per acre, for which he gave his obligation and took from White a bond for a deed. Slaughter subsequently sold the land

to Fowke and West at $8 per acre, and assigned to them his title bond. White brought suit against Fowke and West for the purchase money, and recovered judgment; whereupon Fowke and West filed their bill in equity to stay the proceedings, alleging that Slaughter had agreed to purchase the land, as their agent and for their benefit; that after he made the purchase he reported to them that he had given $8 per acre instead of $6, and under the influence of that representation they had given their bond for that price. Slaughter denied the agency, and the court, again speaking through Chief Justice Boyle, held that the contract, being in parol, could not be enforced, using the following language:

"But if the fact had been as the complainants allege it would not have availed them; for they seek not to vacate the contract on the ground of the fraud or the exorbitancy of the price, but to have the benefit of the defendant's purchase, which they allege he was bound to make as their agent; and they have wholly failed to make out a case that would entitle them to such relief. There is some parol testimony, of an equivocal character, tending to prove that the defendant had undertaken to make the purchase as the agent of the defendants; but there is no written evidence of such an agreement. And, as in fact, he made the purchase in his own name, and upon his own credit, a mere verbal agreement to make the purchase for the complainants can not be enforced under the provisions of the statute against frauds and perjuries."

Letcher v. Letcher's Heirs, 4 J. J. M., 590; Graves v. Dugan, 6 Dana, 632; Griffin v. Coffey, 9 B. M., 453; Hocker v. Gentry, 3 Met., 474; Ecton v. Moore, 4 Ky. Law Rep., 309; Commonwealth v. Maysville B. S. R. R. Co., 94 Ky., 16; Estes v. Estes, 142 Ky., 262, and Wormald's Grdn. v. Heinze, 28 Ky. Law Rep., 1022, 90 S. W., 1064, announce the same general doctrine.

A distinction has been made between cases of the class above described and those cases where one buys land at a judicial sale under a parol agreement to purchase for another, and fails to convey in accordance with the agreement. The last class of cases are not within the statute of frauds, and a resulting trust will arise where the promisee furnished the purchase money, or had an actual interest in the estate, or a bona fide claim thereto. Crutcher v. Muir, 90 Ky., 142; Griffin v. Schlenk, 139 Ky., 523; Sherley v. Sherley, 97 Ky., 512; Payne v. Mc-

Clure Lodge No. 539, 115 S. W., 764; Davis v. Spencer, 128 S. W., 295; Lancaster Trust Co. v. Long, 220 Pa., 449; Wiedmann v. Crawford, 142 Ky., 303; Parker v. Catron, 120 Ky., 145; and Warden v. O'Brien, 142 Ky., Ky., 633, belong to this last class of cases.

But in the case at bar plaintiff's action is, in the light of the Kentucky Decisions, based upon the contract by which Day agreed to buy the land for him; and under the long line of authorities above shown, the statute of frauds governs this case. The demurrer to the petition in Amburgey v. Day should have been sustained.

The judgment in Grinstead v. Amburgey is affirmed; the judgment in Day v. Amburgey is reversed, with instructions to sustain the demurrer to the petition.