## Coleman v. Coleman.

(Decided March 6, 1912.)

## Appeal from Harrison Circuit Court.

Husband and Wife—Divorce—Restoration—Section 425, Civil Code.—
Where husband and wife are divorced, the husband is not entitled
under Section 425, Civil Code, to a restoration of property which
he conveyed to his wife during their marriage for the purpose of
defrauding his creditors.

J. T. SIMON and W. T. LAFFERTY for appellant.

M. C. SWINFORD and T. E. KING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

Appellant, Robert Coleman, and appellee, Sallie
Coleman, were married on March 21, 1883. On December 3, 1904, in an action brought by appellee, they were
divorced by a judgment of the Harrison Circuit Court.
The judgment following Section 425 of the Civil Code,
provided as follows: "Any property not disposed of at
the commencement of this action, which either party may
have obtained, directly or indirectly, from or through
the other during marriage in consideration or by reason
thereof, shall be restored to the party from whom it was
obtained."

This action was brought by appellant against appellee to recover a tract of about 35 acres of land which,
he alleges, was paid for by him, and conveyed to appellee during their marriage and in consideration thereof. Among the defenses interposed by appellee, was that
the land was conveyed to her by appellant, or was caused
to be conveyed to her by him, with the fraudulent intent
to cheat his creditors, and to prevent them from subjecting the land to the payment of their claims against
him. Proof was taken, and upon submission of the case,
the chancellor denied appellant the relief prayed for.
From that judgment this appeal is prosecuted.

It appears from the evidence that the tract in controversy is a part of a larger tract which was purchased
by appellant at decretal sale. Appellant was unable to
execute bond for the purchase price, so he assigned his
bid to W. T. Lafferty. Lafferty agreed that enough land

should be sold to pay the bonds and a reasonable fee, and that the remainder of the land should belong to appellant. The land was sold with the exception of the tract in controversy, and there was realized from the sale a sum sufficient to pay the sale bonds and all of Lafferty's fee except $65. The land was conveyed to appellee by deed, reserving to Lafferty a lien for the balance of his fee. Appellant's purpose in having the land conveyed to his wife is shown not only by the evidence of others acquainted with the facts, but by the allegations of his second amended petition and his own account of the transaction. Thus the amended petition contains the following averment:

"That plaintiff was in debt to some extent at that time, and this was done (the conveyance of the property to appellee) to give him a chance to pay his debts and secure a home for himself and his children."

In answer to the question, "State what about the contract with your wife?" appellant answered as follows:

"I was bound up, and Judge Lafferty said he thought he could straighten it, and make the deed over to my wife, and he said, 'Any time you want to change it you can change it.' Said 'When you get straightened up, we can change the deed,' and we went on and wrote the deed."

On cross-examination, in answer to the question, "Why did you not have this deed made to you by Judge Lafferty instead of to your wife?" appellant answered:

"I was a little behind in some indebtedness, and I knew there was enough coming out of my brother's estate to pay it, but they wouldn't settle up. I owed Mr. William Webber $130, I think, and Mr. William Terry a note, and let me see, I owed another note to somebody. Bob Clifford was the one, and they all wanted their money."

Judge Lafferty testifies that at the time of the conveyance to appellee, appellant was involved, and the deed was made to appellee because it was understood by all present that if the land was conveyed to appellant, his creditors would take it for their debts.

James Coleman, appellant's son and witness, testifies that he understood that the land was deeded to his mother to prevent its being subjected to the payment of his father's debts.

It would be difficult to find a case where the intention of the grantor was made clearer. He and all his witnesses admit that the land was conveyed to appellee to prevent it from being taken away from him by his creditors. Counsel for appellant insist, however, that the proof is not sufficient to justify the conclusion that the conveyance was caused to be made by appellant for the purpose of defrauding his creditors, because the whole transaction was a matter of record and never attacked, which is conclusive that the rights of no creditor were affected. This contention was made in the cases of Carson, &c. v. Beliles, 121 Ky., 294, and Lankford v. Lankford, 117 S. W., 962, and held to be without merit. In the former case, the court said:

"Suppose, for example, one conveys his property on secret trust for the purpose of defrauding his creditors, and then should afterwards pay all his debts, would the fact that no creditor was actually injured enable him to recover from the vendee? Or suppose one having no creditors should convey his property for the purpose of becoming indebted, and of then defrauding his dupes by being insolvent, but should repent before the fraud was committed; could it be maintained that, because he had paid his creditors in the first place, and never had any in the second, he could recover the property so conveyed? We think both these questions should be answered in the negative."

And in the case of Lankford v. Lankford, supra, where the husband, after divorce, was seeking the restoration of certain property on the ground that he conveyed it to his wife in consideration of marriage, relief was denied because it appeared that the conveyance was made by the husband for the purpose of defrauding his creditors, though none of his creditors were actually defrauded. In discussing this phase of the case, the court said:

"This court has held in a long line of decisions that property will not be restored to a grantor who himself conveyed it for the fraudulent purpose of defeating his creditors. The transaction is one which involves moral turpitude in the intention with which it is done. What actually happens may be immaterial. It matters not whether the creditor was actually injured or not, if, as a matter of fact, the debtor makes a conveyance for the purpose of defrauding his creditors. 'He who doeth

fraud may not borrow the hand of the chancellor to draw equity from a fountain his own hath polluted.' Carson et al. v. Beliles, 121 Ky., 294, 89 S. W., 208; 1 L. R. A., (N. S.) 1007; Southwood v. Southwood, 98 S. W., 304, 30 Ky. Law Rep., 307.''

It follows that under the foregoing authorities and the facts of this case appellant is not entitled to recover the land in controversy.

Judgment affirmed.