## Stiefvater v. Stiefvater.

(Decided Oct. 25, 1932.)

FINLEY F. GIBSON, Jr., for appellant.
WILLIAM A. EARL for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

This case is to establish and enforce a parol trust appended to a deed absolute on its face. It may be said, without reciting the evidence, that we concur in the finding of fact of the chancellor that:

The appellee, Mrs. Amelia S. Stiefvater, is the widow of William George Stiefvater, and the appellant, William B. Stiefvater, is the son by a former marriage. For some time before January, 1926, the deceased had been engaged regularly in bootlegging in connection with a restaurant which he and his wife conducted in Louisville. In that month he conveyed a residence in the western part of the city, valued at about $7,500, to his wife for a nominal consideration, but with the definite agreement between them that upon his death she would convey one-half interest therein to his son, who was then a high school boy. She accepted the property upon that verbal condition. The purpose for thus placing the property in his wife's name was, in part at least, "to keep the Federal men from getting him," which, being interpreted, may be said to have been done to avoid having to pay any fine which might in the future be levied against him, for the residence was far removed from his bootlegging establishment, and there is no intimation that it could have been subjected to forfeiture, or otherwise affected.. Stiefvater died nearly four years later. It does not clearly appear that he had ever been arrested before making the

deed; but it does conclusively appear that he was not then resting under a charge, and that he was never apprehended by the officers of the law thereafter, although continuing his illegal business.

The trial court refused to enforce a trust in behalf of the son, upon the theory that since the purpose of its creation was to put the property beyond the reach of the federal authorities, it was therefore created for a fraudulent purpose; that the son occupied no better position than his father in the matter, hence that the court should leave the parties where it found them. The statement of the law is unquestionably correct in the abstract. But is it applicable to the facts?

Whatever may be the law elsewhere in respect to establishing and enforcing a trust in land created in favor of a third person by a parol declaration and an acceptance thereof prior to or contemporaneously with the transfer of the legal title (see annotations, 35 A. L. R. 280, 45 A. L. R. 851), such a trust may be created and enforced under certain conditions in this jurisdiction, where the seventh and eighth sections of the original Statute of Frauds and Perjuries (requiring express trusts in land to be declared in writing) have never been enacted. Smith v. Smith (Ky.) 121 S. W. 1002; Huff v. Byers, 209 Ky. 375, 272 S. W. 897. The reason is that a constructive trust is raised in equity from the nature of the transaction rather than created by the verbal contract, which may be contrary to the spirit of the fourth section of the English Statute of Frauds that has been enacted as sub-section 6 of section 470 of the Kentucky Statutes, relating to the transfer of real estate.

> "The rule in equity always has been that the statute is not allowed to operate as a protection for a fraud or as a means of seducing the unwary into a false confidence whereby their intentions are thwarted or their interests are betrayed."

26 R. C. L. 1233. These constructive trusts are declared in order that the court may lay hands upon the property and wrest it from the wrongdoer who has broken his pledge. In the end they rest on the doctrine of estoppel, and the operation of an estoppel is never affected by the statute of frauds. Fishback v. Green, 87 Ky. 107, 7 S. W. 881, 9 Ky. Law Rep. 959; Parker v. Catron, 120 Ky. 145, 85 S. W. 740, 27 Ky.

Law Rep. 536, 117 Am. St. Rep. 575; Smith v. Smith, supra; Day v. Amburgey, 147 Ky. 123, 143 S. W. 1033; Willis v. Lam. 158 Ky. 777, 166 S. W. 251; Vizard Investment Co. v. York, 167 Ky. 634, 181 S. W. 370; Rudd v. Gates, 191 Ky. 456, 230 S. W. 906; Taylor v. Fox's Executors, 162 Ky. 804, 173 S. W. 154; Newton v. Newton's Adm'r, 214 Ky. 278, 283 S. W. 83.

Putting aside the question of the motive of the grantor in making the conveyance under consideration, we have an analogue in the case of Becker v. Neurath, 149 Ky. 421, 149 S. W. 857, 860, where, as here, there was nothing to show that the grantor was induced. to part with title by the actual intentional fraud of the grantee, upon which ground the doctrine of constructive trusts usually rests. The reasoning of the opinion enforcing the parol trust attaching to an absolute deed is worthy of repetition:

> "When the grantee by act or word has induced the grantor to make the conveyance under an agreement or promise that certain parol conditions attached to it will be complied with, the law will imply a fraud from the failure o f t h e grantee to perform the annexed conditions. If A. tells B. that he will take the title to property and hold it for the use and benefit of some other person, and by reason of this promise B. is induced to and does convey the title, A. will be deemed to have practiced a fraud upon B. if he fails to observe the promise under which he obtained the conveyance. It is the end that the law looks at, and not the means by which this end is accomplished. If a grantee is enabled to obtain the title to property by an express promise to hold it for the use of another and he fails to observe the promise, he is in fact and truth as much guilty of fraud as if by deceit, persuasion, cunning, or other evidence of actual fraud he had obtained that which otherwise would not have come to him. No matter whether the grantee secured the property by what may be termed legal or constructive fraud, or by actual fraud, if he fails to make that disposition of the property that the grantor intended he should make, and that he agreed to make, the person who, except for the promise, would have been the beneficiary of the estate has been defrauded of that which was justly due him. To say that

a grantee, who by misrepresentation, deceit, or undue influence obtains the title to property under a promise that he will hold it for certain uses, will be compelled by equity to perform the trust, but that the grantee, who merely promises the grantor that he will hold the title for certain purposes, and upon this promise the grantor is induced to convey it, will not be required to perform the trust, would be to make a distinction without a difference, and one that would often result in gross injustice.''

The view expressed in that opinion has been consistently followed. Some of the cases have been cited above, to which may be added Chapman's Executor v. Chapman, 152 Ky. 344, 153 S. W. 434; Vanderpool v. Vanderpool, 163 Ky. 742, 174 S. W. 727; Shortridge v. Shortridge, 207 Ky. 790, 270 S. W. 47; Farley v. Gibson, 235 Ky. 164, 30 S. W. (2d) 876; Anglin v. Powell, 235 Ky. 705, 32 S. W. (2d) 54.

The law and the facts of this case make of the grantee in the deed a trustee ex maleficio, and the trust must be enforced against her, unless the transaction is so tainted with fraud as to exclude the interposition of a court of equity in behalf of the beneficiary. We have found no authority directly in point on an important phase of the case, and must proceed to a decision upon principle and analogy.

There is a conflict in the attitude of the various courts as to whether the mere guilty intent of the grantor innoculates the conveyance with fraud when there are no present claims against him, and his fear of future liability proves to be unfounded. And though Harper v. Harper, 85 Ky. 160, 3 S. W. 5, 8 Ky. Law Rep. 820, 7 Am. St. Rep. 583, may seem to align this court with those holding the conveyance not to be fraudulent, the well-considered case of Carson v. Beliles, 121 Ky. 294, 89 S. W. 208, 28 Ky. Law Rep. 272, 1 L R. A. (N. S.) 1007, and many others, place us unequivocally with the opposite group.

Steifvater had no creditors, present or subsequent, so far as the record shows, and never became actually indebted to the government, which he regarded as a potential creditor, by reason of any penalty adjudged against him. Doubtless there are many conveyances made by men to protect themselves and families against the vicissitudes of ordinary business which could not be

considered as fraudulent. Cf. Marler v. A. L. Greenburg Iron Company, 216 Ky. 682, 288 S. W. 676. But where a man is engaged in an illegal business and endeavors to avoid legal liability therefor by covering up his property and placing it beyond the reach of the law, his pernicious intent permeates his transaction, and his moral turpitude is in no way lessened because he escaped a penalty. Thus, where one engaged in the business of swindling others for a livelihood by means of "wire-tapping" conveyed realty to his wife without consideration, such conveyance was deemed to have been made in fraud of future creditors; that being the constant purpose of the grantor. Pendleton v. Gondolf, 85 N. J. Eq. 308, 96 A. 47.

The deed before us may be so regarded, and the trust, in so far as it was for the benefit of the grantor, classed with those secret trusts, frequently encountered, created for the purpose of defeating creditors or of avoiding civil legal liability, and which, after the danger has passed, the grantor seeks to have enforced by a rescission of the conveyance. Of these, Carson v. Beliles, supra, Lankford v. Lankford (Ky.) 117 S. W. 962, and Coleman v. Coleman, 147 Ky. 383, 144 S. W. 1, 39 L. R. A. (N. S.) 411, are typical. The conveyance cannot be validated ex post facto. In such cases there is applied the familiar maxim, "He who doeth iniquity shall not have equity"; or "He who doeth fraud may not borrow the hand of the chancellor to draw equity from a fountain his own hath polluted." The parties are left to lie in the bed they have made. This attitude of the courts is founded upon public policy and not because the transaction is approved or there is any purpose to aid the participating grantee, although that is of necessity the result. 27 C. J. 656.

But should the same rule be applied to a third person, free from the deceptive spirit, for whose benefit the trust was created, and who has a moral claim upon the property? Two things that appeal to the court's conscience stand out boldly: By the deed which the grantee says was made for a fraudulent and evil purpose, and void as to the other beneficiary, she has acquired a fee-simple title to the entire discoverable estate of her husband. By invoking a fraud in which she was at least passively particeps criminis she would retain that property at the expense of a son innocent of any wrong, and deny him his patrimony contrary to the

express wish of his father, who sought to preserve it for him in this manner, and to treat his wife and his son equally in the distribution of his estate, in which purpose she joined.

We cannot follow the learned chancellor in viewing the son standing in his father's shoes. He is not here as an heir or representative occupying the place of a guilty grantor as in Neal v. Neal, 82 S. W. 981, 26 Ky. Law Rep. 962; Southwood v. Southwood, 98 S. W. 304, 30 Ky. Law Rep. 307, or Higgins v. Gose, 144 Ky. 123, 137 S. W. 1038, and therefore cannot be heard. He is here in his own right, and in a different relation. He is not seeking to enforce a trust at the expense of anybody except a trustee ex maleficio, who, having accepted the obligation, now seeks to repudiate it merely because the motive which actuated her husband and herself in creating the trust involved moral turpitude. The son was not an accomplice. He is, in a way, the victim. This suit is not to set aside but is to enforce a trust. No one is concerned but the trustee and the beneficiary. It cannot be fraudulent or illegal in the trustee to execute it.

Even where the grantor is in delicto but not equally so with the grantee, and has been imposed upon, equity will grant him relief. Thus in Davis v. Higgenbothom, 2 Ky. Ops. 550, where two sons had secured deeds from their parents by representing that it would save the land from sale under a supposed claim against an uncle which might fall on their father, and that it would be held in the name of the sons for the benefit of all the heirs, it was held that since the property had been extorted by a fraudulent scheme and by assurance of the grantees of a trust, it was enforcible, although an evil motive in part actuated the grantor.

And in Coffey v. Coffey, 232 Ky. 179, 22 S. W. (2d) 589, an avaricious man frightened his brother into conveying him his home to defeat an anticipated judgment for slander which never materialized, and then sought to hold onto the property thus viciously obtained upon the ground that it was a fraudulent transaction, and the court should not interfere. The court did interfere, and compelled the unfaithful brother to disgorge. The principle and other authorities are stated in that opinion, and need no further recitation.

The appellant, as stated, was in no way involved as

a participant in this transaction, and is in no degree despoiled. The legal title to the property was placed in his stepmother and an equitable title to a one-half interest in him. Generally, creditors of a grantee in a fraudulent conveyance may subject the property, and neither he nor his grantor are permitted to set up its fraudulent character in defense. 27 C. J. 662, 665; Berg v. Frantz, 113 Ky. 888, 69 S. W. 801, 24 Ky. Law Rep. 689. "It is a sound principle," says the court in Grand Lodge, A. O. U. W., v. Beath, 150 Mich. 657, 114 N. W. 662, "that one will not be permitted to repudiate his trust and keep the trust funds, when, with a full knowledge of all the facts, he voluntarily agreed to, and accepted, the terms of the trust; or, in other words, one cannot obtain possession of funds committed to his care by a trust agreement, and then plead the illegality of the agreement." The principle rests upon estoppel. Perry on Trusts, sec. 433. See, also, section 268; 26 R. C. L. 1275; Hughes v. Bent, 118 Ky. 611, 81 S. W. 931, 26 Ky. Law Rep. 453.

The appellant is the equitable owner of a half interest in the property involved. He comes with clean hands, and is entitled to the relief sought.

Wherefore the judgment is reversed, with directions to grant it.