## May, etc. v. May, etc.

(Decided November 18, 1914.)

### Appeal from Pike Circuit Court.

1. Trusts—Resulting Trust—What Is—When Enforceable.—Where a trust is raised by equity in behalf of one who has been imposed upon by another, it is enforced to work out justice and in spite of the intention of one of the parties. Such a trust, though frequently called a resulting trust, is, more strictly, a constructive trust. But in order to establish a resulting or constructive trust by parol proof, such proof must be of the most convincing character.

2. Trusts—Deed from Father-in-law to Son-in-law—When No Implication of Trust Arises.—Where a deed, made in 1847 by the grantor to the husband of his daughter, for the recited consideration of "natural love and affection to his (the grantor's) daughter," and "the full sum of eleven hundred dollars, in hand paid" by the grantee (son-in-law), the receipt of which is acknowledged, conveyed him eleven hundred acres of land, the son-in-law being the only grantee named in the deed and its language vesting in him alone a fee simple title to the land conveyed; and there was never any intimation from the grantor or grantee, though the former lived thirty-five and the latter sixty-five years after the conveyance, that a trust was intended for the benefit of the grantee's wife; and the only evidence offered to establish the trust were certain fugitive statements of the wife, not made in the presence of her husband or father, that the land conveyed by deed to her husband came from her father or had been given her by her father; held, that there was a failure to establish the trust.

J. S. CLINE for appellants.

MAY & MAY and YORK & JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On April 2, 1847, Allen Leslie, a large landowner in Pike county, this State, by deed of general warranty conveyed to his son-in-law, Thomas P. May, several tracts of land situated in that county, aggregating about eleven hundred acres. Immediately following the execution of the deed, Thomas P. May took possession of the land, and he and his wife, Elizabeth Margery May, daughter of Allen Leslie, lived upon a part of it, until both became so old and feeble that they were unable to take care of themselves, when they removed to the home of their youngest son, William R. May, where they remained many years and until they died. The death of

Elizabeth Margery May occurred January 19, 1909, and that of Thomas P. May, August 28, 1910; the former being, at the time of her death, ninety-two years of age, and the latter ninety-three. After the conveyance of the eleven hundred acres of land to Thomas P. May by his father-in-law, Allen Leslie, he conveyed therefrom a small tract to his son, Thomas B. May, another small tract to his son, Wm. R. May, and a still smaller tract to one Hurt, to each of whom he made deeds; which left to Thomas P. May about eight hundred acres of the eleven hundred conveyed him by Allen Leslie, of which he remained in possession until his death. In addition to the conveyance of the lands mentioned to his sons Thomas B. and Wm. R. May, Thomas P. May, during his lifetime, made advancements in lands and money to each of his other children, of which there were quite a number.

Elizabeth Margery died intestate. It does not appear from the record that she owned any property in her own right or that there was any administration of her estate. On the 3d day of March, 1891, more than nineteen years before his death, Thomas P. May made a last will which was attested by J. B. Hatton and R. T. Burns, two of his neighbors, whereby he devised to his wife, Elizabeth Margery May, "during her natural life," the eight hundred acres left of the lands conveyed him by Allen Leslie, and also certain personal property, including money, with the proviso that at her death the land should go to his son, Wm. R. May, and that the latter should pay to certain of his other children and a grandchild, named therein, $200.00 each. The will also set out such advancements as he had previously made to his children, closing with this language:

"I have heretofore given to all of my other children all that I intend them to have of my estate, except as I provide in this, my will. I tried to make them as nearly equal as I could. I have tried to be a good and kind father to all of them, and I hereby pray God's blessings may richly rest upon them all."

The will was duly admitted to probate, but as it appointed no one executor, Wm. R. May was appointed administrator, with the will annexed, of the decedent's estate and duly qualified as such.

On the 28th of March, 1911, the appellants, A. J. May and others, children and heirs at law of Thomas P. May, deceased, instituted this action in the Pike Circuit Court against the appellees, Wm. R. May and others, also chil-

dren, grandchildren and heirs at law of the testator, seeking to have the deed of April 2, 1847, from Allen Leslie to Thomas P. May adjudged a conveyance in trust for the benefit of the children and heirs at law of Elizabeth Margery May, upon the ground that it only passed and was intended to pass the title to the eleven hundred acres of land thereby conveyed to Thomas P. May in trust for the use and benefit of his wife, Elizabeth Margery May, who was the only daughter of the grantor, Allen Leslie; that the title thereto was so held by Thomas P. May during his life, and that at the death of Elizabeth Margery May the trust inured to the benefit of her children and heirs at law, for which reason Thomas P. May was, as alleged, without power to dispose of the land by will, as attempted by him. It was further claimed in the petition that Thomas P. May, by reason of age and feebleness of mind, was incompetent to make the will executed by him March 3, 1891; and that its execution was procured by and through undue influence exercised over his will-power by his son, the appellee, Wm. R. May, for which reason the court was asked to set it aside, compel a settlement of the testator's estate by Wm. R. May, as administrator with the will annexed; and to make distribution thereof, including a division of the eight hundred acres of land attempted to be devised, among the children and heirs at law of Thomas P. and Elizabeth Margery May; and, further, that in distributing such estate as was left by Thomas P. May individually, each of the heirs at law be charged with such advancements as he or she may have received from him before his death.

The appellees, by separate answers, specifically denying all the material allegations of the petition, resisted the relief prayed therein; and after the issues had been fully completed by the subsequent filing of the necessary responsive pleadings, proof was taken by the parties. On the submission of the case the court rendered the following judgment:

"This cause being submitted for judgment on the pleadings, proof and exhibits filed, and the court, after hearing the arguments of counsel and thereupon being sufficiently advised, adjudges that no resulting trust was created in favor of Elizabeth Margery May by the deed of April 2, 1847, from Allen Leslie to Thomas P. May, and therefore adjudges that the petition of plaintiffs, insofar as it seeks to have the land in said deed and in the petition described adjudged the property of said

Elizabeth Margery May, or that the said Thomas P. May held the title thereto in trust for her, be and the same is hereby dismissed. * * * The other issues raised by the pleadings are reserved for future adjudication. * * ''

From that judgment this appeal is prosecuted. The only question brought to us for review by the appeal is whether or not the deed from Allen Leslie to Thomas P. May was properly construed by the judgment appealed from. The language of the deed, omitting the boundaries of the lands conveyed, is as follows:

"THIS INDENTURE, made and entered into this 2nd day of April, one thousand eight hundred and forty-seven, between Allen Leslie, of Pike County and State of Kentucky, of the one part, and Thomas P. May, of the County and State, the other part, WITNESSETH: That the sd. Allen Leslie hath this day *for and in consideration of natural love and affection to his daughter, Elizabeth Margery, the wife of said Thomas P. May, and the full sum of eleven hundred dollars in hand paid by the sd. Thomas P. May, the receipt is hereby acknowledged,* have given, granted, aliened, enfeoff, and conveyed unto the said Thomas P. May the following tracts and parcels of land, to-wit: * * * To HAVE AND TO HOLD *unto the sd. Thos. P. May and his heirs forever,* together with all and singular its appurtenances free from the claim or claims of all and any person or persons whatever, shall, will and forever warrant and defend unto the sd. Thos. P. May and his heirs forever. In Witness the said Allen Leslie hereunto sets his hand and seal the above written.''

It will be seen that there is nothing in the language of the deed that shows an intention on the part of the grantor to establish a trust. In the caption Thomas P. May is the only grantee named. Again in the granting clause he is the only grantee designated, and, finally, the habendum clause unmistakably vests in him an absolute, fee simple title to the lands conveyed and covenants that the grantor will forever defend and warrant the title "unto the sd. Thomas P. May and his heirs forever." So it cannot be said that the alleged trust is expressly or by implication established by the language of the deed. A resulting trust must arise by operation of law, and though it may be established by parol proof, it has not satisfactorily been so established by appellants in this case.

Substantially the only evidence relied on by appellants

to show the alleged trust is furnished by the relationship of the parties to the deed, the fact that the consideration in part for the conveyance was the love and affection the grantor had for his daughter, the grantee's wife, and certain fugitive expressions on the part of the latter that the lands conveyed by the deed had been given her by her father. As to the first proposition, it may be said that the relationship gave the grantor every opportunity to acquaint himself with the character and business capacity of the grantee, both of which were shown to be excellent; therefore it is not unreasonable to conclude that the grantor's confidence in the husband of his daughter was of itself an inducement to the conveyance as made. Indeed, it appears from the evidence that on one occasion, at least, the grantor said he had conveyed the lands to Thomas P. May because he knew he would take care of them. It would seem, therefore, that the grantor believed the ownership of the lands by the husband would be as beneficial to the latter's wife as if the deed had invested her with the title or conveyed it in trust to the husband for her benefit. It is doubtless true that the love and affection which the grantor entertained for his daughter caused him to convey the land to her husband for a less sum of money than he would have sold it for to another, but that fact is not inconsistent with a purpose on the part of the grantor, otherwise appearing in the deed, to invest his son-in-law with an absolute title to the lands conveyed. It is true that the wife, on one or two occasions, said that she had received the land from her father, and likewise true that she did not join in the deeds which her husband made conveying three small parcels of the land to others, but the statements referred to, in view of her knowledge of the terms of the deed from her father to her husband, could have had no other meaning than that the lands came to her husband because of his marriage to her. It was not shown that she ever claimed they were held by him in trust for her; nor does it appear from the evidence that she refused or was asked to join in the deeds made by the husband, or that she objected to the execution of the deeds.

There was some evidence introduced by appellants to the effect that Allen Leslie, during the Civil War, put in the hands of his son, James Leslie, certain notes of which he feared guerrillas would rob him, some of which notes were owing by Thomas P. May, and an intimation by one witness that one of these notes was for the con-

sideration, or a part of it, which Thomas P. May agreed to pay Allen Leslie for the lands the latter conveyed to him; but the amount, date and time of maturity of none of the notes is given, and it fully appears from the evidence that these notes were surrendered by James Leslie to Thomas P. May many years before the latter's death, upon the claim of May and the assent of Leslie that they had been paid. On the other hand, it was shown by appellee's evidence that the $1,100.00 purchase price for the land named in the deed was paid by Thomas P. May, and there was nothing in any of the evidence which conduced to prove that the acknowledgement of its payment expressed in the deed was untrue.

In addition, it was further shown by the evidence that Allen Leslie lived for more than thirty years after he had executed the deed in question to Thomas P. May, his residence being only a half-mile from that of May; and that during the whole of that time there never escaped from him any claim or intimation that the deed had conveyed the lands in question to Thomas P. May in trust for the latter's wife. Moreover, the will which Thomas P. May made nineteen years before his death was held by his wife and kept in her trunk until her death. It also appears that she knew the contents of this will and that it disposed of eight hundred acres of the land which had been conveyed to her husband by her father, by devising it to her for life with remainder at her death to her son, the appellee, Wm. R. May; yet, notwithstanding such knowledge on her part, she asserted no claim to the land as *cestui qui* trust. It was also shown by the testimony of some neighbors of Thomas P. and Elizabeth Margery May, who saw and were constantly thrown with them for years before their death, that there was never an intimation upon his part or claim upon hers that the lands conveyed him by Allen Leslie were held by him in trust for the wife.

Much of appellants' evidence was as to the value of the lands in controversy. Some of the witnesses fixed its value at from $10,000.00 to $15,000.00 as of the date of the deed; while the evidence of appellee conduced to prove that its value was far less; the weight of the evidence being to the effect that it did not then exceed $5,000.00. But, be this as it may, the evidence as to the value of the lands conveyed does not of itself, or, in connection with the other evidence relied on to that end, establish the trust claimed by appellants. At any rate, we

are not convinced that the evidence as a whole is of such clear and satisfactory character as to create an equity superior to the deed, in contradiction of its expressed terms.

The deed from Allen Leslie to Thomas P. May was executed prior to the enactment of section 2353, Kentucky Statutes, which provides:

"When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration."

At the common law, where the consideration for land was paid by one person and the title taken to a third person, a stranger in relation to the person paying the consideration, the person taking the title held it in trust for the person making the payment, the trust in such case arising out of the presumption that there was an agreement between the parties to that effect; therefore, the trust in behalf of the one paying the consideration resulted, which attached to the land. This was called a resulting trust, which is one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance. But where a trust is raised by equity in behalf of one who has been imposed upon by another, it is enforced to work out justice and in spite of the intention of one of the parties. A trust of this character must necessarily involve some element of fraud, actual or constructive, perpetrated by or arising out of the conduct of the party charged with the trust. Such a trust, though frequently called a resulting trust, is more strictly a constructive trust.

The alleged trust attempted to be enforced in this case does not rest upon the ground that the grantee, Thomas P. May, took the deed from Allen Leslie in his own name without the consent of his wife, or that the land was purchased with the money or property of the latter, but that the land conveyed the grantee, Thomas P. May, was received by him under a parol agreement with the grantor that the grantee would hold the title in trust for the grantee's wife, which agreement is attempted to be established wholly by parol testimony

amounting to little more than hearsay evidence. We do not mean to say that such a trust may not be proved by parol evidence, for numerous cases so holding appear in the books. Snelling v. Utterback, 1 Bibb, 609; Faris v. Dunn, 70 Ky., 276; Caldwell v. Caldwell, 70 Ky., 515; Webb v. Foley, 20 R., 1207; Row v. Johnson, 25 R., 1799. With respect to the cases mentioned, we, in Nelson by, etc., v. Nelson, 29 R., 885, said:

"But these were cases in which it was clearly made to appear, either that the deed to the land conveyed was received by the grantee under an agreement with the grantor, or one paying the consideration, to hold the title in trust for a third person, or where the grantee in violation of a trust purchased the land with the means of another. There are yet other cases in which, upon parol evidence of a secret trust in behalf of an insolvent debtor, created by his act in conveying, or causing to be conveyed to another property which, but for such conveyance, would be liable for his debts, the courts, at the suit of creditors, have declared the conveyance a fraud upon them, and subjected the property to the payment of his debts."

We understand it to always have been the law that in order to establish a resulting or constructive trust by operation of law, the proof must be of the most convincing character. In Devlin on Real Estate (3d edition) Vol. 2, section 1183, the author, in discussing this question, says:

"As it is sought in attempting to establish a resulting trust to raise an equity superior to the deed, and thus give it an effect not apparent upon its face, the proof that one other than the grantee is beneficially interested must be clear and convincing. We recognize the doctrine to the fullest extent, and such is the uniform holding in all the cases that where a right or title is claimed against a writing, in this or any other class of cases, where it is permitted at all, it must be sustained by proof of the most convincing and irrefragable character. The courts have been deeply impressed with the danger of this kind of proof, as tending to perjury and insecurity of paper titles. Kent and other eminent judges regret that the doctrine was ever introduced, as it opens a wide door to frauds and perjuries, which the statute was intended to close. * * * This rule is based upon the soundest legal principles, for the parol proof must of necessity be the testimony of witnesses as to what the parties have

said or verbally agreed to—a class of testimony noto-
riously weak—and the fact to be overturned is a writing,
the best evidence as to where the legal title is.''

Again in the same section, page 2215, the author
further says:

''In a case where a father-in-law, by an absolute deed,
conveyed land to his son-in-law, evidence was given to
the effect that the grantor had declared that he possessed
no property and also that the claim of ownership of the
land was made by the grantee's wife, but the court said
that this evidence was not sufficiently of that clear and
convincing character necessary to establish a resulting
trust in favor of the wife.''

In 39 Cyc., 166, it is said:

''In order to establish a resulting trust by parol evi-
dence, as against the holder of the legal title to property,
the proof of all the essential facts and circumstances
must, as a general rule, be clear, full, convincing and sat-
isfactory, and of such a character as to disclose the exact
right and relations of the parties and take the matter out
of the realm of conjecture or presumption, especially
after a long lapse of time; and where the evidence is un-
certain, conflicting, doubtful or unsatisfactory, or is capa-
ble of reasonable explanation on a theory other than the
existence of a resulting trust, no trust will be held to be
established. The language used by the courts, however,
in stating this rule, has not been by any means uniform,
but it has been variously stated that the proof must be
clear and unequivocal, most convincing and irrefragable,
clear and unquestioned, clear and undoubted, or so clear,
strong and unequivocal as to banish every reasonable
doubt of the existence of such trust; or if the evidence
is wholly by parol, that it should be received with great
caution. Thus, to raise a trust between the members of
the same family, as between husband and wife, father
and son, the evidence must be positive and free from all
ambiguity; and loose and general expressions of inten-
tion in common conversation acknowledging a general
obligation, etc., will not be sufficient.''

In its further discussion of trusts, 39 Cyc., 126, con-
tains the following statement as to the question of con-
sideration:

''The nature or form of the consideration which may
be furnished by one person for a conveyance to another
as giving rise to a resulting trust, is, ordinarily, imma-
terial, provided it is something of value. It may consist

of the performance of professional or other services, care
and support, and exchange of property, a bond, or mort-
gage, or other securities, credit, or the payment of an
indebtedness of the grantor to another. But natural love
and affection alone is an insufficient consideration to es-
tablish a resulting trust."

It seems manifest from the evidence found in the
record that $1,100.00 was actually paid by Thomas P. May
for the lands conveyed him by Allen Leslie, and while
this sum may not have been the full value of the land,
the consideration paid by the grantee was, nevertheless,
a valuable one, and the fact that because of his wife's
being a daughter of the grantor, the latter sold him the
land for less than he would have demanded of another
for it, is not of itself sufficient to impeach the considera-
tion or to establish the alleged trust.

All the facts presented by the evidence show the great
confidence Allen Leslie held in his son-in-law, Thomas P.
May, and that that confidence was unimpaired by any-
thing that occurred during the more than thirty years
the former lived after the execution of the deed to the
son-in-law. So the case we have is one in which there was
a plain deed containing all the essentials of a valid con-
veyance purporting to convey an absolute title of record
for sixty-five years, with the grantee in absolute posses-
sion and control of the lands it conveyed him, claiming,
owning and using the property without intimation from
the grantor, or the wife of the grantee, that it was held
by the latter charged with any trust for the benefit of
his wife or her children, and such a claim was never as-
serted or heard of until this action was instituted by the
appellants. As a general rule, it is the policy of the law
to require that everything which may affect the title to
real estate shall be in writing, and that nothing shall
be left to the frailty of human memory or as a tempta-
tion to perjury; and whenever this policy of the law has
been broken in upon and parol evidence admitted, the
courts have been very careful to examine into every cir-
cumstance which may affect the probability of the alleged
claim as the lapse of time, the means of knowledge and
circumstances of the witnesses; and the relief sought will
not be granted where the claim has been permitted to lie
dormant for an unreasonable length of time, or where
the evidence is not very clear in support of the alleged
right; especially where no claim has been set up during
the lifetime of the trustee, but is preferred against his

heirs, who may not be supposed to know anything about it or be able to defend as their ancestor might have done. It is for this reason that the courts have uniformly held that if the trust does not appear on the face of the deed and parol evidence is relied on to establish it, such evidence must be clear, unmistakable and convincing to establish the trust.''

In Pool, etc., v. Thomas, etc., 10 R., 92, there was a contest between the widow of a decedent and his child by her on the one side and the children of the decedent by a former wife on the other side, the latter claiming that certain land of the decedent was purchased by him with money received from their mother under an agreement by him to have the deed made to her, and that, therefore, a trust resulted in her favor which could be enforced by them as her heirs at law. In refusing the relief sought, the court said:

''While it is the established law of this State that resulting trusts may be established by parol evidence, yet it is equally well established that the evidence establishing such trusts should be clear and satisfactory. * * * The facts of this case illustrate the wisdom of this rule. For here, after a lapse of twenty-six years, and nearly ten years after the death of Mary M. Thomas, and after C. C. Thomas had married again and died, leaving his second wife and one child by her, the appellants attempt to establish the trust by their own proof of the admissions of C. C. Thomas, which belongs to that class of evidence denominated as the weakest in law, and which admissions, at most, are in general terms and do not show with reasonable certainty that the agreement wsa made with his wife, or that her money was actually used to pay for the land, both of which facts must concur in order to establish such a trust.'' Treadway v. Farris, 90 Ky., 663.

The statute of limitations has not been pleaded in this case and could not have been successfully relied on had the alleged trust been satisfactorily established, but in view of the failure of the alleged beneficiary to assert such a trust during the sixty-five years that intervened between the date of the deed by which it was claimed to have been created and that of her death, the claim of appellants as to the existence thereof is condemned by its staleness. If there was such a trust the acts of Thomas P. May, in selling and deeding three small parcels of the land, constituted a violation, if not a repudiation, of the

trust. These sales and conveyances were made with the knowledge of his wife, and she should then, in self-protection and in fairness to the purchasers, have asserted the existence of the trust and forbidden the sales. But this she did not do, and, therefore, even if the appellants had sufficiently established the alleged trust, it could not be enforced as to the lands thus sold by Thomas P. May, as they are now in the hands of innocent purchasers. It is a well-recognized rule in equity that the court will not give its aid to enforce a resulting or constructive trust after the lapse of a long period of time and in the absence of any explanation of the laches of the *cestui que* trust. Long and unexplained delay is a material circumstance against the establishment of implied trusts in real estate, when parol evidence alone is relied upon to establish the trust.

As in our opinion the judgment of the circuit court properly determined that no trust was created by the deed from Allen Leslie to Thomas P. May in favor of the latter's wife or her children, the judgment is affirmed.