## Kimmons, et al. v. Barnes & Metcalfe, et al.

(Decided November 11, 1924.)

### Appeal from Christian Circuit Court.

Frauds, Statute of—Principal Cannot Compel Agent Purchasing Property to Convey, Unless Contract was in Writing.—Where agent in violation of contract purchases property in his own name and pays purchase price himself, principals cannot compel conveyance, unless contract between them was in writing and signed, though principals purchased outstanding leases on assurances that property would be delivered to them, nor can they recover for repairs and improvements made with knowledge that agent claimed property, but principals should be permitted to remove fixtures installed by them.

TRIMBLE & BELL for appellants.

BREATHITT & BREATHITT and JAMES B. ALLENWORTH for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellees, E. P. Barnes, et al., partners doing business under the firm name of Barnes & Metcalfe, sought by filing their petition in equity in the Christian circuit court to have the title of a business house known as the Summers Building, in Hopkinsville, Kentucky, conveyed to them by appellants, William Kimmons and wife, and in the event that could not be done to recover the value of repairs and improvements to it made by them. By their petition they alleged that appellant, William Kimmons, was their close personal and business friend and confidant; that they procured him to purchase the house for them, and that he, violating the confidence reposed in him and his agreement with them that he would purchase it for them, purchased it and took the title to himself. They alleged that after he so purchased the building he informed them that he had purchased it for them and advised them that he would turn it over to them at any time and, while holding out to them that he had purchased it for them, discussed fully with them their plans to purchase the outstanding leases on the building and the repairs and improvements that they were planning to make, and stood by and suffered them to spend $8,319.25 in purchasing the outstanding leases and in making repairs and improvements.

Appellant, William Kimmons, denied that he bought the building for appellees or that they ever said anything to him about the purchase of the building and claimed to have bought it as an investment for his wife, and she claimed that her husband had purchased the building for her and that the money invested in same was her own money, the proceeds of her home inherited by her from her father, and that it was bought for her and conveyed to her without any knowledge of the claims of appellees, and therefore she was entitled to hold the same as an innocent purchaser.

The three members of the firm of Barnes & Metcalfe sustain the allegations of their petition by their testimony, and in addition they took the testimony of some seven or eight other witnesses which tends to establish that appellant, Kimmons, purchased the building in question for them. However, it is admitted by all parties concerned that Barnes & Metcalfe furnished no part of the purchase price paid for the building when purchased,

but, on the other hand, that Kimmons furnished all of it. If we should accept as true all the testimony introduced for appellees, it yet seems to us that the law interposes an insurmountable barrier to prevent their recovering the house and lot in question. It has been decided in numerous cases in this jurisdiction that where an agent goes out to purchase property for a principal, if in violation of the contract he purchases the property, pays the purchase price himself from his own funds and takes the title to himself, the principal can not compel the agent to convey the property to him unless the contract between them was in writing and signed by the parties. Perhaps the most outstanding case on the question is that of Day v. Amburgey, 147 Ky. 123. In that case Amburgey employed Day as his agent to buy a tract of 331 acres of land and authorized him to pay $500.00 for it and agreed to pay him $100.00 for his services as agent. Day purchased the land, paid $300.00 for it, paid for it with his own money, and evidently fearing that under the circumstances he might be liable to Amburgey, had the land conveyed to one G. M. Adams to hold for him. Day denied the contract and pleaded the statute of frauds as a bar to recovery. The trial judge held that the agency existed and that for the violation of the contract an implied trust arose between them, the principal and agent, that was not affected by the statute of frauds, and adjudged that Day convey the land to Amburgey. We held in that case that the contract sued on falls within the provisions of our statute of frauds and that a demurrer to Amburgey's petition should have been sustained. The opinion in that case was exhaustive and we see no reason why this opinion should be unduly lengthened by a repetition of the reasons governing the court in reaching the conclusions there set forth. The Kentucky cases in point are referred to in the Amburgey opinion and the later case of Doom v. Brown, 171 Ky. 469, follows the rule there laid down.

Appellees contend, however, that inasmuch as appellant, Kimmons, subsequent to his purchase and payment of the purchase price of the Summers building reported to appellees that he had purchased it for them and that they might proceed to buy the outstanding leases on the building and repair it to suit themselves, with full assurance that he would deliver the property to them at any time they might want it, and inasmuch as they, relying upon his statements to that effect, spent $8,319.25 in

purchasing the outstanding leases and in repairs to and improvements upon the building, they have produced a state of case stronger than any heretofore before this court and sufficient to invoke equity to imply or construct a trust in their favor such as a court of equity should enforce by compelling appellants to convey the property in question to them. However, we can not lose sight of the fact that even if we should concede that appellant purchased the house and lot pursuant to his agreement with Barnes & Metcalfe so to do, yet he purchased it with his own funds, took the deed of conveyance to himself and immediately had the deed recorded, which gave constructive notice to all persons that the title of the property was his. Appellees in their testimony say that, in the first conversation they had with appellant, subsequent to his purchase of the house and lot, he exhibited to them the deed that conveyed the property to him. As the circumstances then stood between the parties, the house and lot was the property of appellant, William Kimmons, and appellees had no claim, equitable or otherwise, to it that they could then enforce. Although appellant may have been guilty of a moral wrong in the matter and was, if we should accept appellees' version of the controversy, still, under the circumstances, the die had been cast and the law fixed the status of the parties. Appellees cannot be heard to say that they were in ignorance of the law with reference to the question. When we analyze the testimony introduced for appellees with reference to the money they spent in purchasing the outstanding leases on the building and in repair of and improvements upon it, we are convinced that their contention must fail. Appellants were engaged in the mercantile business. The building in which they had been located had been sold and their lease on it would expire January 1st, following. When the Summers building was purchased by appellant the portion of same which appellees desired to use for their mercantile business was under lease to the Kentucky Public Service Company and the Hopkinsville Water Company for a period of two years. If Barnes & Metcalfe could purchase that lease they would have a business house to move to when their lease on their then location should expire. Business houses suitable in size and location for the mercantile business were hard to obtain. The rental value of property had greatly increased. The item of $2,230.88, the cost, according to appellees' testimony, of the pur-

chase of the outstanding leases, consisted largely of the difference in rent of the quarters to which the Kentucky Public Service Company and the Hopkinsville Water Company moved over the rent provided for in their lease of the Summers building which had two years yet to run and the cost of moving those firms to their new quarters. The remainder consisted of a bonus Barnes & Metcalfe had to pay them to induce them to move and a bonus to the occupant of the building to which they moved. Barnes & Metcalfe took a transfer of the leases held by them upon the basement and first floor of the Summers building. None of that $2,230.88 of expense could possibly be said to have benefited appellant, the owner of the building. He had purchased the Summers building subject to the two years' lease on it; and none of that item of expense increased to any extent Kimmons' rents on the building. Appellant, Kimmons, by his testimony, emphatically denied that he agreed with Barnes & Metcalfe to purchase the Summers building for them; or that he ever told any of them that he would purchase it for them. On the other hand, he testified that he purchased the building on his own initiative and as an investment for his wife. He testified that he purchased the building before he learned that the building then being occupied by Barnes & Metcalfe had been sold and that when he learned that fact he did what he could and everything they testified he did to help them to purchase the outstanding leases on the house he had bought because he wanted them to find a location in which they could continue in business as they were his business friends and customers. Appellant was a traveling salesman for the Ely-Walker Dry Goods Company, and appellees were retail dry goods merchants. He testified that when the question of repairs and improvements was raised he notified appellees that with the two years' outstanding leases on the building, at the rate of rent provided by them, the building would not pay reasonable returns on the investment and that he would not make any improvements or repairs himself or suffer any to be made at his expense, but that they might at their own expense make any improvements or repairs they desired. Appellees contended that all the repairs made by them were made while appellant was holding out to them that he had purchased the building for them and would turn it over to them at any time they desired. According to their testimony they first learned on the 13th day of De-

cember, 1919, that Kimmons was claiming to have bought the Summers building as an investment for himslf; and they admit that from that date on he continued to claim that the property was his and that he had bought it for himself. At that time the Summers building had just been vacated by the Kentucky Public Service Company and the Hopkinsville Water Company, and appellees admit by their own testimony that on that date none of the improvements or repairs had been made by them. From their testimony the lumber used in putting in the counters and shelving had been prepared and shipped. But aside from that, all the work done by them in improving and repairing the Summers building and all the money spent by them in so doing was done and spent after the 13th of December, the date on which they acknowledge that they received actual notice from appellant, Kimmons, that he claimed the building as his own and claimed to have bought it for himself. The greater portion of the work of improving and repairing the building was done by labor paid for by the day.

In view of these facts, which are made to appear from the testimony of appellees themselves, we can not hold that the acts of the parties subsequent to the purchase of the building by appellant so changed the status of the case that a court of equity should construct a trust in favor of appellees and compel the conveyance of the Summers building to them, and in view of the fact that virtually all the expense of repairing and improving the Summers building was incurred by appellees after they admit they had actual knowledge that appellant claimed to have bought the building for himself and that it was his, and in view of the fact that the title was in him, as we have heretofore seen, we cannot hold with appellees' contention that they at least are entitled to recover the amount the improvements and repairs put upon the building by them enhanced its vendible value. With reference to the expense of purchasing the outstanding leases on the Summers building and the improvements and repairs put upon it by them, Barnes & Metcalfe are in no better position than they would have been if Kimmons had been its owner in the first place and had orally agreed with them that he would sell it to them. The decisive fact of this case is the fact about which there is no controversy, that Kimmons paid his own money for the Summers building. Eliminating appellant's testimony, considering that of appellees' alone, when they

sent him out to purchase the Summers building without furnishing to him the money with which to do so, there was merely a parol contract between them by which Kimmons agreed that if he could purchase it he would in turn sell it to them. Such a contract can be enforced only when in writing and signed by the parties. Appellees spent the money they seek to recover relying upon that nonenforceable contract.

This proceeding has been in equity. Our consideration of the record leaves us with the conclusion, however, that in equity and good conscience appellees, Barnes & Metcalfe, in view of all the circumstances of the parties and their transactions, should be permitted to remove from the Summers building the counters, balcony, shelving and electric light fixtures placed in it by them. In reaching that conclusion, we take into account the emphatic testimony of appellant and his witnesses that such improvements have in no wise enchanced the value of the building.

For the reason herein indicated, the judgment is reversed and this cause remanded for further proceedings consistent herewith.