RUSHTON *v.* ISOM.

4-6836                                        164 S. W. 2d 997

Opinion delivered October 19, 1942.

*Harry B. Colay,* for appellant.

*Melvin T. Chambers,* for appellee.

SMITH, J. This is a suit to quiet the title to a lot "200 feet by 240 feet in the east one-half of block 8 of the original survey of the town of Emerson."

This relief is prayed upon the following allegations and testimony. The lot was owned by a bank of which T. S. Grayson was president. Grayson agreed to sell the lot to appellee for the cash consideration of $225, and appellee entered into the possession of the lot in 1934. It was contemplated that the purchase price be paid by the 1st of the following year, but being unable to make the payment at that time, appellee requested Henry Rushton to pay for the lot and to take a deed to himself as security until she could repay him the purchase money. Rushton paid the bank the $225 purchase money, and took a deed to the lot in his own name, as it was agreed he should do. Extensive repairs were required, and were made, the cost of which is disputed, and there is some controversy as to who paid for them, including the cost of digging a well.

Rushton died without having made a deed to appellee. After his death his widow and heirs-at-law conveyed to a son of Rushton, and when the widow and heirs refused to make appellee a deed, this suit was brought to compel this action, and from a decree awarding that relief is this appeal.

If the case presented no facts other than those just recited, the relief prayed would have to be denied, for the reason that as the agreement between appellee and Rushton for the purchase of the lot rested in parol, and Rushton paid his own—and not appellee's—money for the lot, the statute of frauds would forbid its enforcement.

It was held in the case of *Robbins* v. *Kimball,* 55 Ark. 414, 18 S. W. 457, 29 Am. St. Rep. 45, to quote a headnote,

that "One who pays for land and takes deed to himself is not bound by a parol agreement to let another have an interest in the land upon payment of a portion of the expenses incurred in acquiring the title, nor by a parol agreement to purchase for himself and the other jointly."

This holding has been reaffirmed in a number of subsequent cases which are cited and reviewed in the case of *George* v. *Donohue,* 191 Ark. 584, 86 S. W. 2d 1108.

But there are other facts which must be considered, one of which alone is decisive of the case, that is, the validity of a receipt reading as follows: "On this day the 31st of August, 1937, I, Henry Rushton received from Lavada Isom the sum of $300, making a total of $550 received from her for the purchase of the following land and improvements thereon 200 x 240 feet of land, east side of block 8, original survey, located in the town of Emerson, county of Columbia, state of Arkansas. (Signed) Henry Rushton."

It may also be said that the statute of frauds is not pleaded in this case, and that, according to appellee's testimony, she was placed in possession of the lot pursuant to her agreement to purchase it, and remained in possession of it until 1940, at which time she was ejected, whereupon she brought this suit.

All the witnesses, including several who testified on behalf of appellants as handwriting experts, admit that the name signed to the receipt is the genuine signature of Henry Rushton. It was their opinion, however, that the typewritten recital of the payment of money did not appear on the paper when Rushton signed it.

In their opinion, the paper in question was the top of a paper writing, probably in pencil, which Rushton had signed, and that this writing had been erased and the typewritten matter appearing above Rushton's signature substituted, although Rushton signed with pen-and-ink.

We have this writing before us, as did the chancellor below, where it was examined under a magnifying glass. He reviewed the testimony and announced the following finding and conclusion:

"There is no way of knowing what Mr. Rushton did, he is dead, and except for these witnesses there is no one to testify to the transaction. If it had been written on newspaper, or on paper that had been used for some other writing, still I do not think it smacks of fraud. One erasing a letter couldn't have done that good a job. To take a letter and erase all the writing on it is quite a job, and couldn't be done so neatly as to show, or to look like it hadn't been erased. The receipt shows they bought this piece of property and that they paid the purchase price of the property."

Without reciting the extensive and conflicting testimony upon the question whether the receipt is a forgery, we announce our conclusion to be that we are unable to say that the chancellor's finding upon this issue is contrary to a preponderance of the evidence. If this receipt is genuine, and is not a forgery, then the testimony is conclusive that the trust existed which the court declared.

There appears to the case of *Kimmons* v. *Barnes,* 205 Ky. 502, 266 S. W. 891, 42 A. L. R. 5, an exhaustive annotation, extending from page 10 to page 126 of the volume last cited, upon the effect of an oral promise of one to buy land for another. Cases from our own as well as from English courts and the courts of all the other states are cited. These are to the effect that, if one is given money by another to purchase land, and the agent takes the conveyance to himself, a trust results by operation of law and will be declared by the courts. Here, Rushton did not pay appellee's money, but paid his own money; but that he bought as agent and for the benefit of appellee is conclusively shown by the fact that he accepted from her the purchase money and the cost of the repairs. He was, therefore, her trustee.

Among the numerous cases cited by the annotator in the Kimmons case, *supra,* and from which he quotes, is that of *Avery* v. *Stewart,* 136 N. C. 426, 68 L. R. A. 776, 48 S. E. 775, where it was said: " 'If the legal title is obtained by reason of a promise to hold it for another, and the latter, confiding in the purchaser and relying on his promise, is prevented from taking such action in

his own behalf as would have secured the benefit of the property to himself, and the promise is made at or before the legal title passes to the nominal purchaser, it would be against equity and good conscience for the latter, under the circumstances, to refuse to perform his solemn agreement and to commit so palpable a breach of faith.' "

Appellee testified that she advised Rushton that she was prepared to complete payment for the lot, but that when she did so he gave her the receipt copied above, and when she asked Rushton why he did not give her a deed, he answered that his wife would not sign it, and that the receipt would suffice until a deed could be procured. Rushton died without executing the deed, but that fact does not affect the obligation of his widow and heirs to appellee to divest themselves of the legal title which Rushton held as trustee for appellee's benefit. As Rushton had title only as trustee, his widow had no dower or other interest in the land.

The decree vesting title in appellee is affirmed.