## ANTLE v. HAAS et al.

Court of Appeals of Kentucky.
June 20, 1952.

Rehearing Denied Oct. 17, 1952.

C. L. Bell, E. R. Johnson, Louisville, for appellant.

Steinfeld & Steinfeld, Louisville, for appellees.

STEWART, Justice.

This suit was instituted by plaintiff, Herman G. Antle, to establish a construc-

tive trust growing out of an alleged contract of agency and to compel defendants, Joseph Haas, Mary L. Haas, his wife, and R. J. Haas, his son, under such contract, to convey three unimproved lots in Louisville to plaintiff. The Chancellor dismissed the cause of action and plaintiff appeals.

The three parcels of land involved in this litigation for the purpose of identification may be described as follows: Parcel "A" being 55 x 223 feet on South Bicknell Avenue 30 feet east of Taylor Boulevard. Parcel "B" being 40 x 103 feet fronting on an alley in the rear of 1214 Bicknell Avenue. Parcel "C" being 30 x 223 feet on the southeast corner of Bicknell Avenue and Taylor Boulevard.

Appellant saw the "for sale" sign of appellee, Joseph Haas, hereinafter referred to as "Joseph", a real estate broker, located on the above lots, and called on him March 21, 1947, for the purpose of buying the three parcels of land. Joseph told appellant the three lots were listed with him for sale and that the total purchase price for them was $2,500. A writing was then executed and we set forth its pertinent provisions, to wit:

"Louisville, Ky. March 21, 1949.
"Joseph Haas

"Thru you as agent, I will give for the following described property in Louisville, Kentucky 55 x 223 feet, 30 x 223 ft. corner lot and 103 x 40 feet lot rear 55 feet East of the 55 foot lot facing Bicknell, located between Taylor Blvd and Peachtree Streets, with all improvements thereon and known as No.      , the sum of ($2500.00) Twenty-five Hundred Dollars, payable as follows:

"All Cash on Date of Deed

"This lot is facing Bicknell St. Both 85 x 223 feet more or less & South East lot is facing the alley

\*      \*      \*      \*      \*      \*

"1946 and assessed State & County taxes and City taxes to be paid in 1948

"It may take some extra time to locate the Jones family

"Possession to be given on Date of Deed

"As evidence of good faith binding this contract, a deposit of $100.00 is to be applied on purchase price upon delivery of deed or refunded should title prove uninsurable or if this offer is not accepted.

"Seller is to pay the regular commission prescribed by the Louisville Real Estate Board. In the event this contract covers an exchange of properties, the owner of each piece of property involved agrees to pay the regular real estate commission, based on the value of his property as established in this contract.

"This proposition is good until 6 P M on the 21 day of April, 1947.
"Herman G. Antle
"4903 Southern Parkway"

Appellant then gave Joseph a check for $100, with the words "deposit on lots" written thereon, which Joseph subsequently endorsed in blank and deposited in his account on March 24, 1947. On June 10, 1947, after Joseph had assured appellant by telephone a short time prior thereto that the deal was nearing completion, he sent by mail an envelope addressed to appellant which contained his business card and his personal check drawn in favor of appellant for $100. The check was dated June 9, 1947, and bore the following notation on its face: "Returned deposit on Taylor & Bicknell." This check was rejected by appellant. The printed portion of the card is as follows:

"Realty Broker      Financing
   Builder               Property Management
               Joseph Haas
                  Broker
          1208 Ashland Avenue
Mary L. Haas      Louisville, Ky.
                  Franklin 4628"

On the card in the handwriting of Joseph was this written statement: "Please find enclosed check, I could not get same *excepted*. Yours Respt." No signature followed thereafter but below the written statement was a drawn marker pointing to the printed name, "Joseph Haas", and at the bottom of the card Joseph had written: "I may call you again someday."

On June 18, 1947, a deed dated June 16, 1947, covering parcel "A" and a deed dated June 7, 1947, embracing parcel "C" were recorded, in which Joseph and his wife, Mary L. Haas, were the grantees. Ownership of parcel "B", however, did not change on either of the above dates because the title to the lot was in a construction company under a commissioner's deed dated March 19, 1947. On July 17, 1947, parcel "B" was conveyed to Joseph's son, R. J. Haas, by the construction company. Joseph's wife and son are appellees in this action. Joseph paid for the two deeds to himself and his wife by certified checks; one check was dated June 4, 1947, and the other June 18, 1947. Thus on June 4, when Joseph made his first payment on the lots, he still had possession of appellant's down payment to him of $100 for the lots.

The following issues are presented in this case: (1) Was there a real estate sales contract entered into between appellant and Joseph? (2) Did a principal-agency relationship come into existence between appellant and Joseph, and, if so, did it terminate before Joseph purchased the lots? (3) Is the contract of agency, if such arose, within the statute of frauds? (4) Can equity impose a constructive trust upon the property in this case?

■ Clearly no real estate sales contract binding upon the vendors came into existence in the case at bar. The instrument on its face was merely an offer to an agent which was never accepted according to its tenor by the owners of the lots and, therefore, was not legally obligatory on them. City of Murray v. Crawford, 138 Ky. 25, 127 S.W. 494, 28 L.R.A., N.S., 680.

■ The Chancellor found that Joseph was the agent of the property owners and not the agent of the buyer. This is an assumption the Chancellor deduced from the provision in the offer which stipulated that the seller should pay the commission in event the latter should accept the proposition contained in the writing. Such a finding is flagrantly against the evidence. H. A. Zanone, the owner of one of the lots, testified that Joseph was not his agent.

Appellee, Mary L. Haas, testified that the property in dispute was never listed with Joseph for sale and that some prankster must have placed the "for sale" sign on it. Just how Joseph's real estate broker's sign got on the lots is unexplained by the record. Although Joseph did not testify, he did admit in the second paragraph of his answer that "On, or about, March 21, 1947, the Plaintiff engaged the services of the Defendant (Joseph) as a Real Estate Broker to purchase for the Plaintiff the real property described in the petition." We think the foregoing facts lead to the inescapable conclusion that Joseph was the agent of appellant to purchase this property for him.

■ The real estate sales offer provided that the proposition contained therein was good for thirty days, but in another part of the writing is this statement: "It may take some extra time to locate the Jones family." The "extra time" mentioned in the instrument must mean additional time from the date the offer would otherwise expire. After the lapse of thirty days Joseph continued to lull appellant into believing that the deal was about completed. Furthermore, he retained appellant's deposit on the purchase price. Appellees, as a matter of fact, do not seriously contend that there was a change of relationship after the lapse of thirty days. It is therefore reasonable to assume that the principal-agency relationship was still in effect when Joseph made his first payment on the property.

We now come to the difficult issue in this case, namely, whether there was a sufficient written acceptance to establish the agency agreement and, if so, to take it out of the application of the statute of frauds. So much of KRS 371.010, known as the Statute of Frauds, as is applicable to this case is as follows: "No action shall be brought to charge any person: * * * (6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year; or * * * unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged

therewith, or by his authorized agent. The consideration need not be expressed in the writing, but it may be proved when necessary or disproved by parol or other evidence."

■ The rule applying to an agent's agreement to buy land for his principal is thus stated in Kimmons v. Barnes & Metcalfe, 205 Ky. 502, 266 S.W. 891, 42 A. L.R. 5: "It has been decided in numerous cases in this jurisdiction that, where an agent goes out to purchase property for a principal, if in violation of the contract he purchases the property, pays the purchase price himself from his own funds, and takes the title to himself, the principal cannot compel the agent to convey the property to him, unless the contract between them was in writing and signed by the parties." See also Day v. Amburgey, 147 Ky. 123, 143 S.W. 1033. In 42 A.L.R. 36, there is an excellent note on this point.

The Chancellor was of the opinion that only one writing in connection with the offer should be considered on the statute of frauds issue, viz., appellant's check to Joseph which the latter endorsed. In deciding that the two instruments did not meet the requirements of the statute, he relied upon Rhinehart v. Kelley, 145 Ky. 470, 140 S.W. 653, and the line of cases founded thereon, wherein it was held that the blank endorsement on the back of a check does not constitute a ratification of a parol contract, because, as stated therein, a writing is not deemed to be legally signed unless the name be subscribed at the end of such writing as contemplated by KRS 446.060. This is not the common law rule. Terrell v. Commonwealth, 194 Ky. 608, 240 S.W. 81. Moreover, in Purtell v. Bell, 179 Ky. 356, 200 S.W. 644, 645, a check for $250 marked "Payment on Bell property" was delivered to an agent and thus endorsed: "W. A. Ginn, agent, for delivery Geo. G. Bell. Apply on residence West Bath avenue, Ashland, Ky." The Court pointed out in this case that the endorsement on the check, together with a letter written by the agent to the owner of the property, identified the real estate and designated the terms of the contract, so as to evidence a sales agreement, although the one or the other, considered separately, would not satisfy the statute of frauds.

Nevertheless, if we should reject the endorsement on the above described check as insufficient to establish a written acceptance of an agency agreement by Joseph for the rather technical reason advanced in the Rhinehart case, we have still other writings. There is the card and mailed with it was the check by which Joseph under his signature sought to return the $100 deposit to appellant. The card referred to the written offer and recognized its existence as a contract. Appellee had already secured the acceptance of his own offer for the property when he wrote on the card: "I could not get the offer *excepted*". Instead of his written signature, he affixed a marker pointing toward his printed name, "Joseph Haas."

■■ It would seem that when Joseph made the marker on the card and pointed it toward his name he intended thus to authenticate the writing to the same extent as if he had signed his name to it. But, we are not compelled to say that the marker pointing toward his name constitutes his signature. Nevertheless he did sign the check by which he attempted to pay back the deposit and on which he wrote, "Return deposit on Taylor & Bicknell". We do hold, however, that the check and the card are so interconnected they should be considered together. Although the check together with the card was Joseph's attempt to ring down the curtain on the deal, yet the check alone sufficiently identified the property by a writing that satisfies the statute of frauds, and it is of no consequence that appellant refused to accept the check. In the Purtell case we have this statement, quoted from Wood on Statute of Frauds, Sec. 345, which applies with particular·force to the facts we have just recited:

"It is immaterial in what form the memorandum is made, or whether it was ever delivered to the other or not, provided that in itself, or by reference to [other] writings, it embraces all

the essential elements of the contract. Nor is it material in what form the writing admitting the existence of a contract, the memorandum of which is signed by one party, is made by the other party. If it admits the contract, and refers to the memorandum in such a manner that the court can connect it therewith and ascertain the terms of the contract without the aid of parol evidence, it is sufficient to bind him, although he did not intend thereby to ratify the contract. The moment written evidence of the contract, under his hand, in whatever form, exists, the contract is taken out of the statute, even though such admission is in the form of a letter repudiating the contract."

█ The writing offered to or through Joseph as agent, signed by appellant, which describes the property and which states the terms of purchase, was, in our opinion, taken out of the statute of frauds by Joseph by mailing the card to appellant and by signing the check seeking to return the deposit under the circumstances we have detailed. Both writings referred to the written offer in such a manner that one can connect them with it and determine the terms of the contract without the aid of parol evidence.

In the case at bar a real estate broker prepares and has signed a written offer addressed to such broker to buy real estate not listed with him and accepts and cashes a deposit check accompanying the offer. May such broker, while lulling the person into inactivity by assurances of good intentions, then go and buy the property himself and have it conveyed to himself, his wife and his son, without being accountable to the person making the offer by way of a constructive trust?

█ Unquestionably the relationship of Joseph and appellant as shown by the proof developed in this case brings it within the equitable doctrine of constructive trusts. The general rule applicable under the circumstances is thus set forth in 65 C.J., Trusts, Sec. 227, p. 481:

"Where a person acquires the legal estate in property as the agent of another, or upon trust and confidence that he will acquire it for the benefit of another, equity will imply a trust in favor of the latter. Thus, where one employed to act as agent of another in the purchase of property takes title in himself, he will be considered in equity as holding the property in trust for his principal, even though he makes the purchase with his own money, in such case being entitled, in connection with the enforcement of the trust, to reimbursement of his proper expenditures."

█ The evidence establishes beyond question that Joseph not only breached his contract of agency with appellant but that he practiced bad faith when he undertook to purchase the lots as agent for appellant and instead bought them for himself. Although two of the lots were deeded to Joseph and his wife, Joseph paid for both of them. The son testified that his father, Joseph, was his agent, and the evidence discloses rather definitely that Joseph paid for the lot conveyed to his son. There can be little doubt that the wife and the son knew of appellant's rights before they received their deeds and that they acted in concert with Joseph in an effort to place the property beyond appellant's reach. Therefore, their rights can be no greater than Joseph's. It is our opinion that a constructive trust has arisen in this case out of Joseph's violation of his duties as a fiduciary and that he should be compelled to perform his promise with respect to the lots.

Wherefore, the judgment is reversed with directions that it be set aside and with further directions that a new one be entered decreeing a constructive trust in favor of appellant and requiring appellees to convey the property involved to appellant upon the terms of the written offer.