**Carl APPLEBY and M. A. Morgan, Appellants,**

v.

**Joe J. BUCK et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 22, 1961.

Davis Williams, Munfordville, for appellants.

Carroll M. Redford, Glasgow, Joseph Martin, Edmonton, for appellees.

PALMORE, Judge.

This appeal is from a judgment dismissing appellants' complaint on the ground of the statute of frauds, KRS 371.010(6).

The substance of the complaint is that after plaintiffs and defendants had agreed to take oil and gas leases on a 21-acre and a 33-acre tract of land the defendants went to the owner, falsely told him that plaintiffs had withdrawn from the deal, and obtained the leases in the name of one of the defendants, who now holds for the benefit of himself and the other defendants. The details of the contract were that plaintiffs, at the instance and request of defendants, had "located" the leases and arranged with the owner to take them for a consideration of $2,000, following which defendants agreed to furnish the $2,000 and assume the expense of the first test well on the 21 acres. Plaintiffs were to have a 1/16 overriding royalty and a 3/16 working interest in the 21-acre lease. The 33-acre lease was to be divided in half and by the toss of a coin plaintiffs drew the north half. This is what the plaintiffs propose to prove, and they demand appropriate assignments and payment of their alleged share of the proceeds thus far realized from successful production.

An oil and gas lease is an interest in real estate, Dempsey v. Diederich, 1950, 313 Ky. 865, 233 S.W.2d 976, within the meaning of the statute of frauds. Beckett-Iseman Oil Co. v. Backer, 1915, 165 Ky. 818, 178 S.W. 1084. However, a trust in land arising out of a parol agreement does not come within the statute. Moore v. Terry, 1943, 293 Ky. 727, 170 S.W.2d 29, 31; Anglin v. Powell, 1930, 235 Ky. 705, 32 S.W.2d 54, 56. Hence the question here is whether the facts alleged in the complaint show a trust.

The object of the statute of frauds "is not to aid but prevent fraud." Stewart v. Stovall, 1921, 191 Ky. 508, 230 S.W.

929, 932. This sometimes is given as the reason equity will recognize and enforce a constructive trust in spite of the statute. 89 C.J.S. Trusts § 141, pp. 1025–1026. But in this jurisdiction at least, the real reason is that the statute has never applied to trusts, whether express, implied in fact, or raised by implication of law. The English statute of frauds, 29 Car. II, c. 3 (1677), did not apply to the colonies already settled at the time of its enactment. 49 Am.Jur. 364 (Statute of Frauds, § 2). The seventh section, providing that all trusts of lands should be proved and manifested by writing, has never been adopted in Kentucky. Smith v. Smith, 1909, 121 S.W. 1002, 1004; Vizard Inv. Co. v. York, 1916, 167 Ky. 634, 181 S.W. 370, 372; Huff v. Byers, 1925, 209 Ky. 375, 272 S.W. 897, 898. See, for example, Huff v. Fuller, 1922, 197 Ky. 119, 246 S.W. 149 (express trust); Smith v. Smith, supra (resulting trust); and Jones v. Nickell, 1944, 297 Ky. 81, 179 S.W.2d 195 (constructive trust).

In seeking a rationale for the decisions of this court declaring the purchaser of land to be or not to be the unintended trustee for another it is important to consider the difference between a resulting trust and a constructive trust in that type of situation, as it is apparent that in some of the earlier opinions oral agreements that could have been given effect under the theory of constructive trusts were held unenforceable because they did not satisfy the requirements of a resulting trust.

"A 'resulting trust' is one arising upon the naked fact that one furnishes the consideration, while the title is taken to another, a stranger, without an agreement as to the use or trust. It was held at the common law that a trust resulted from the facts, without agreement to that effect." Smith v. Smith, 1909, 121 S.W. 1002, 1004. Theoretically, the trust was presumed as a matter of law to rest upon intent, though in fact there may not have been such an intent. May v. May, 1914, 161 Ky. 114, 170 S.W. 537, 540. The essential factor determining equitable ownership is not fraud, but the source of consideration. 54 Am. Jur. 152–153 (Trusts, §§ 193, 194). KRS 381.170 expressly recognizes that a trust may result if a grantee takes title without consent of the person paying the consideration.

On the other hand, the distinguishing feature of a constructive trust is not the matter of consideration, but some element of fraud, either actual or constructive. May v. May, 1914, 161 Ky. 114, 170 S.W. 537, 540; 54 Am.Jur. 167–168 (Trusts, § 218). "It has been broadly ruled that a breach of confidence, * * * rendering an acquisition or retention of property by one person unconscionable against another, raises a constructive trust." 54 Am.Jur. 169 (Trusts, § 218).

Just what will amount to a "confidential" or "fiduciary" relation is a matter over which equity reserves considerable freedom to say. Bogert, Trusts & Trustees, § 481. "The tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof." 54 Am.Jur. 178–179 (Trusts, § 233). According to the Restatement, Restitution, § 190, "Fiduciary relations include among others the relation of trustee and beneficiary, guardian and ward, agent and principal, attorney and client. Each member of a partnership is in a fiduciary relation to the other partners." Likewise included are joint adventurers, who are partners for a limited purpose, or a single transaction. Jones v. Nickell, 1944, 297 Ky. 81, 179 S.W.2d 195, 196; Bogert, Trusts & Trustees, § 488.

The mere co-ownership of fractional working interests in an oil and gas lease does not create the relation of partners or joint adventurers in the operation of the lease. Summers, Oil and Gas, § 723; Young v. Hill, 1933, 247 Ky. 672, 57 S.W. 2d 470; Terrill v. Carpenter, D.C.E.D.Ky., 1956, 143 F.Supp. 747, aff'd 249 F.2d

142. Even though appellants' complaint says that according to the alleged agreement the 9⁄16 working interest they were to have in the 21-acre lease "was to bear its proportionate part of the cost of exploring, developing and producing oil and gas from said lease, except the expense of drilling the first test well," that circumstance does not indicate that they and the defendants had agreed, either expressly or impliedly, to participate jointly in the operation of the lease, which is one of the requisites of a mining partnership. "The fact that a cotenant's share of oil or other mineral produced is chargeable with a proportionate share of the cost of production is consistent with his cotenancy relationship and he does not become a mining partner because of this fact." Summers, Oil and Gas, § 623.

Nevertheless, it has been fairly established that if two parties agree to purchase land for possible resale at a profit, their purpose is to "deal in" the property and the agreement is not within the statute of frauds. Jones v. Nickell, 1944, 297 Ky. 81, 179 S.W.2d 195. Now, if they agree to obtain a lease in order that the minerals may be extracted and sold at a profit, is the purpose really any different in principle from a contemplated resale of land as a whole, or from an intended renting of the property? From the standpoint of whether the parties have a relationship of trust and confidence with each other, which is the heart of a constructive trust, we cannot say so.

The concept of "joint adventure" is a hazy one. Bogert, Trusts & Trustees, § 488. In Whitsell v. Porter, 1949, 309 Ky. 247, 217 S.W.2d 311, 314, on which appellants place great reliance, it was said that a joint adventure may exist for the limited purpose of acquiring title to property. If so, the acquisition and division of their interests among the several parties completes the venture insofar as it is a combined effort, and it would seem immaterial whether they intend thereafter to manage the enterprise jointly or to go their various ways, as would be usual in the

trading of mineral interests. Though it is argued that the appellants did not risk any loss, they stood to lose the benefit of whatever time and effort they may have invested in discovering the availability of the leases and putting the deal together. Assuming the allegations of the complaint to be true, as we must for the purposes of this appeal, we conclude that the agreement to join together in the acquisition of the two leases had enough of the attributes of a joint adventure to create a confidential relationship, the violation of which with impunity would be unconscionable. For comparison as to result, see 20th Century Coal Company v. Taylor, Ky.1954, 275 S.W. 2d 72 and Goodwin v. Smith, 1911, 144 Ky. 41, 137 S.W. 789. See also Clark v. Smith, 1933, 252 Ky. 50, 66 S.W.2d 93, in which this court assumed for purposes of the argument, but did not find it necessary to decide, that a trust would arise under analogous circumstances.

The end result in Whitsell v. Porter, 1949, 309 Ky. 247, 217 S.W.2d 311, probably could have been reached on the theory of the time-honored precedents holding that a trust will arise where property is bought at a judicial sale under a parol agreement with one who has an interest in or bona fide claim to it. Fishback v. Green, 1888, 87 Ky. 107, 7 S.W. 881, 9 K.L.R. 959; Brooks' Ex'r v. Strange, 1912, 147 Ky. 503, 144 S.W. 747; Hunter v. Hunt, 1944, 296 Ky. 769, 178 S.W.2d 609. (In Doom v. Brown, 1916, 171 Ky. 469, 188 S.W. 475, this was called a resulting trust, but in fact it is a constructive trust. Erdman v. Kenney, 1914, 159 Ky. 509, 167 S.W. 685, 686; Restatement, Restitution, § 181; 54 Am.Jur. 182–183, Trusts § 241; Bogert, Trusts & Trustees, § 494, pp. 196 et seq.) It might also have been decided, as appellees have suggested, on the basis that the agreement was in writing. Nevertheless, the court chose to rest its opinion on the equally sound theory of joint adventure and constructive trust.

It is hard to distinguish this result, in principle, from Ewing v. Clore, 1927, 219

Ky. 329, 292 S.W. 824, wherein it was held that an oral agreement under which one of the parties was to buy a tract of land by private negotiation with the owner and then divide, it in kind with the other party created a mere agency, and could not be enforced after the agent had purchased the property in his own name and with his own money. On the other hand, it is equally difficult to equate Ewing v. Clore and the various agency cases, such as Day v. Amburgey, 1912, 147 Ky. 123, 143 S.W. 1033, and Kimmons v. Barnes & Metcalfe, 1924, 205 Ky. 502, 266 S.W. 891, 42 A.L.R. 5, with the principle more recently stated by this court in Antle v. Haas, Ky.1952, 251 S.W.2d 290, 295, to the effect that if an agent purchases, even with his own money, property he was engaged to acquire for his principal, he holds as a constructive trustee.

In the absence of a confidential relation between the parties, or of some pre-existing ownership interest or claim in the promisee, it was long ago held that an oral undertaking to purchase land and then re-convey to another creates a mere agency, falling within the statute of frauds, and is unenforceable if the purchase is made in the agent's name and with his own money or credit. Fowke v. Slaughter, 1820, 10 Ky. (3 A.K. Marsh.) 56, 13 Am.Dec. 133. Later cases rejected the trust theory on the ground that the promisee did not provide any of the consideration for the purchase, and in so doing manifested an unmistakable tendency to confuse the requirements of a constructive trust with those of a resulting trust. See, for example, the leading case of Day v. Amburgey, 1912, 147 Ky. 123, 143 S.W. 1033, followed by Kimmons v. Barnes & Metcalfe, 1924, 205 Ky. 502, 266 S.W. 891, 42 A.L.R. 5, and Ewing v. Clore, 1927, 219 Ky. 329, 292 S.W. 824. (The latter opinion distinguishes the partnership cases on the ground that in equity real estate bought for a partnership was treated as personalty, this being a well-recognized principle, completely separate from the trust theory, upon which it often has been held that the statute

of frauds does not apply to contracts between partners. See Garth v. Davis & Johnson, 1905, 120 Ky. 106, 85 S.W. 692, 27 Ky.Law Rep. 505, 117 Am.St.Rep. 571; Jones v. Nickell, 1944, 297 Ky. 81, 179 S.W. 2d 195, 196; 49 Am.Jur. 545–548, Statute of Frauds, §§ 220, 221).

"The majority rule is * * * that the breach of contract is a breach of confidence by the agent and gives rise to a constructive trust, the proof of which is not within the statute of frauds or the parol evidence rule, and it has been held to be immaterial that there was no consideration for the agreement of agency, where the agency is entered upon and the purchase made." 54 Am.Jur. 180–181 (Trusts, § 237). This rule, says Bogert, has "the better of the argument on principle." Bogert, Trusts & Trustees, § 487, p. 174. As we construe it, Antle v. Haas, Ky.1952, 251 S.W.2d 290, in spite of its nominal recognition of the precedents represented by Day v. Amburgey, 1912, 147 Ky. 123, 143 S.W. 1033, and Kimmons v. Barnes & Metcalfe, 1924, 205 Ky. 502, 266 S.W. 891, 42 A.L.R. 5, (and on which the court expressly relied in Ewing v. Clore, 1927, 219 Ky. 329, 292 S.W. 824) necessarily overrules them by holding that the agent has a trust relationship with his principal. Therefore, between the Antle case and the Whitsell case it would appear that Ewing v. Clore has been cut down along with the agency cases.

Since a constructive trust is enforceable regardless of whether the agreement from which it arises is oral or written, the existence of a writing was immaterial in both Whitsell v. Porter, 1949, 309 Ky. 247, 217 S.W.2d 311, and Antle v. Haas, Ky.1952, 251 S.W.2d 290. If the facts of the Whitsell case established a joint adventure, so do the facts of this case; and if the facts of the Antle case, a simple agency situation, raised a constructive trust, so also do the facts alleged here. In all three, someone took for himself something he had agreed to obtain for another, or for both, and he is answerable not on a promise to convey an interest in land, but as a con-

structive trustee by virtue of the violation of his obligation of loyalty to his associate. Restatement, Restitution, § 194, Comment d, p. 798.

We think this case is distinguishable from the situation in which the party who purchases property has agreed to sell it, or a part of it, to another: Though it may have been necessary to effect assignments in order to complete the agreed arrangement, the fair import of the allegations is that the parties were to act in concert in obtaining the leases. But even if it had been agreed that the appellees should themselves do the trading with the lessor, the understanding that the appellants were to have an interest in the leaseholds would have made the appellees their agents, thus creating the confidential relationship that is the essential foundation of a constructive trust.

Judgment reversed for further proceedings consistent with this opinion.